Garabed GULBENKIAN et al., Appellants,

v.

Frederic H. PENN et al., Appellees.

No. 6341.

Court of Civil Appeals of Texas.

Amarillo.

Nov. 23, 1953.

Rehearing Denied Dec. 21, 1953.

Palmer & Rochelle, Dallas, for appellants.

Brundidge, Fountain, Elliott & Bateman, Dallas, for appellees.

PITTS, Chief Justice.

Appellants, Garabed Gulbenkian, Arax Gulbenkian and Hrepsime Gulbenkian, the two surviving children and the surviving widow, respectively, of Kerope Gulbenkian, deceased, filed suit against Frederic H. Penn for, damages by reason of an alleged breach of the provisions of a certain license agreement executed on December 19, 1939, by and between Kerope Gulbenkian during his lifetime and Frederic H. Penn under and by virtue of a certain United States Patent concerning the monthly payment of a minimum royalty in the sum of $250 by Penn as licensee to Gulbenkian as licensor during the life of the license agreement. Appellants further alleged that Kerope Gulbenkian died thereafter on December 29, 1940, leaving them as his sole surviving heirs.

A motion for summary judgment for the $250 per month for six years and one month or for 73 consecutive months aggregating the total sum of $18,250 was first sustained by the trial court, from which an appeal was perfected to the Dallas Court of Civil Appeals of the Fifth Supreme Judicial District, which Court reversed and remanded the cause for a trial on the merits since the record revealed triable issues of fact to be determined. Penn v. Garabed Gulbenkian, Tex.Civ.App., 243 S.W.2d 220. Such judgment was affirmed by the State Supreme Court, 151 Tex. 412, 252 S.W.2d 929. We refer to both of these citations for a further and more complete statement of the case. However, while the case was on appeal

from the summary judgment, Frederic H. Penn died in December of 1950 and William D. Penn of Dallas County and the Mercantile National Bank of Dallas County thereafter qualified on January 9, 1951, as joint independent executors of the estate of Frederic H. Penn, deceased, and were by amended pleadings made proper party defendants to this suit. They will be hereafter referred to as appellees.

The case now before us was tried to the court without a jury and judgment was rendered for appellant for the $250 monthly royalty payments from July 4, 1947, to December 4, 1948, both months inclusive, being a total of 18 months and the aggregate sum being $4,500, together with accrued interest thereon in the amount of $1,308.75. Appellants perfected an appeal to the Dallas Court of Civil Appeals and the same was transferred to this Court by order of the State Supreme Court in equalizing the court dockets. Appellants contend that the expiration date of the license agreement was August 4, 1953, and that they were therefore entitled to the minimum royalty monthly payments of $250 from July 4, 1947, to August 4, 1953, the same being for six years and one month or for 73 consecutive months, amounting to a total of $18,250 with 6% interest thereon, while appellees contend that the date of expiration of the license agreement was December 15, 1948, as found by the trial court. Therefore the controlling issue to be here determined is the date of the expiration of the original license agreement in question executed on December 19, 1939, by and between Kerope Gulbenkian and Frederic H. Penn, both now deceased, as the said agreement affected the promise of monthly payments by licensee Penn to licensor Gulbenkian of a minimum royalty of $250 during the remainder of the life of the said license agreement. Such was one of the defensive issues or triable issues of fact urged as grounds for reversing the summary judgment on the former appeal.

At the request of appellants the trial court made and filed its findings of fact and conclusions of law and it likewise filed further findings at the request of appellants.

We shall make references here only to the material findings and conclusions concerning the controlling issue. The trial court found, in effect, that the expiration date of the United States Patent No. 1,836,134 (known as the Schotz Patent), upon which the life of the license agreement in question depended, was December 15, 1948, and that Frederic H. Penn, the original licensee, repudiated the license agreement on October 21, 1947, but that no monthly payments were made after June of 1947. For which reasons the trial court concluded, in effect, that the life of the license agreement, according to the record, expired on December 15, 1948, and that appellees were liable to appellants only for the $250 monthly minimum royalty payments from July, 1947, to December, 1948, both months inclusive, or for a period of 18 months, making a total sum of $4,500, with interest thereon in the sum of $1,308.75, aggregating $5,808.75.

It was pleaded by appellants that the expiration date of the United States Patent No. 1,836,134 was December 15, 1948, and such is specifically admitted by them. But they contend that the expiration date of the license agreement in question was August 4, 1953. Appellants further admit that the difference of opinions about the expiration date of the license agreement "is the real issue in this case".

The license agreement in question is too lengthy to be set forth in full. As was done by the parties in their respective briefs, we shall set forth only the pertinent portions of the license agreement here involved in the following language:

"Now Therefore, for the sum of One Dollar ($1.00) in hand paid, the receipt of which is hereby acknowledged, and other good and valuable considerations, Licensor does hereby grant unto Licensee, his heirs, executors, administrators and assigns, the entire and exclusive right, license and privilege to manufacture, sell, use and license others, the inventions embodied in United States Patent No. 1,836,134 (in accordance with the exclusive license granted to Licensor by Schachno Peisach

Schotz) and to any improvements or inventions relating to the subject matter thereof or thereon herebefore or hereafter made and/or acquired by Licensor *to the full end of the term of United States Patent No. 1,836,134.* (Which is admitted to be December 15, 1948.)

"And In addition to the considerations hereinabove referred to, the licensee further agrees to pay to the Licensor *until August 4, 1953,* a royalty of *fifteen cents (15¢)* a pound for each and every pound of bleaching product manufactured and sold by him or his sub-licensees *under United States Patent No. 1,836,134 during the term of this license agreement;* and the licensee further agrees to pay to the Licensor a minimum royalty of *Two Hundred and Fifty Dollars ($250.00) per month during the term of this license agreement.* The payments hereinabove provided shall be paid monthly." (Emphasis ours.)

■ An examination of the first part of the agreement previously copied herein reveals, in effect, that licensor granted to licensee an exclusive right, license and privilege of the benefits of the product in question by virtue and under the terms of the United States Patent No. 1,836,134 until the expiration date of the said United States Patent which is admitted to be December 15, 1948. The benefits here involved are the minimum monthly payments only of $250 until the expiration date of the agreement. No claim is here made for payment for royalties over and above the minimum amount fixed at a stipulated price of 15¢ per pound. Further language therein used states that in addition to the considerations previously set forth, it was agreed that payments of 15¢ per pound for the product in question be authorized until the date of August 4, 1953, but that provision was made under the terms and subject to the provisions of the United States Patent No. 1,836,134 which admittedly expired on December 15, 1948. Nowhere does it appear or indicate that the date of August 4, 1953,

is the expiration date of the said Patent No. 1,836,134 upon which the terms of the entire agreement are based and depend. The time for the expiration of the license agreement was definitely fixed at the "end of the term of United States Patent No. 1,836,134" and all parties agree that the said patent expired on December 15, 1948. Whatever the purpose of the parties to the agreement might have been when the date of August 4, 1953, was inserted in the agreement, it was nothing more than a general provision and could not have been controlling as to the expiration date of the obligation in question because that date had already been therein definitely fixed by the terms of the agreement as previously stated.

It is our opinion that the trial court was justified in finding and concluding that the provisions of the agreement fixed the termination date of the same as being the end of the term of the United States Patent there described, which was December 15, 1948. It is our opinion further that the provision there made definitely fixing the termination of the contract is a specific or a special provision of the agreement, which, under the rules of construction, will control over any conflicting general provisions that may be therein contained. Lutcher & Moore Lumber Co. v. Beaumont, S. L. & W. R. Co., Tex.Civ.App., 33 S.W.2d 1077, affirmed Tex.Com.App., 49 S.W.2d 726; Leopard v. Stanolind Oil & Gas Co., Tex.Civ.App., 220 S.W.2d 259; 17 C.J.S., Contracts, § 313, p. 731, and other authorities there cited.

■ Appellants further complain because the trial court refused to make a further finding at their request concerning the contents of an affidavit filed in opposition to the motion for summary judgment at the former hearing, which affidavit remains a part of the record in the cause. The affidavit in question was made by Frederic H. Penn, now deceased, and it furnishes no basis for establishing any controverted issue here presented. It was not introduced in evidence at the trial and was not offered in evidence in so far as the record reflects. It therefore forms no part of the statement of facts upon which the trial court must

rely for support of any and all findings made and filed. Whatever the affidavit contained was before the court attached to a pleading and spoke for itself. It was not error for the trial court to refuse to make a finding concerning an instrument not introduced or offered in evidence, so far as the record reflects, and particularly since the contents of the affidavit would not help to solve any controverted issue here presented.

An examination of the record and the briefs reveals no error committed. Appellants' points to the contrary are all overruled and the judgment of the trial court is affirmed.