CITY OF SAN ANTONIO, Appellant,

v.

HEATH & STICH, INC., Appellee.

No. 5827.

Court of Civil Appeals of Texas, Waco.

May 19, 1978.

Rehearing Denied June 15, 1978.

Jackson C. Hubbard, Asst. City Atty., James M. Parker, City Atty., San Antonio, for appellant.

Roy L. White, Roy C. Brock, Brock, Bingham & Person, San Antonio, for appellee.

## OPINION

JAMES, Justice.

This case involves the construction of a written contract. Plaintiff-Appellee Heath and Stich, Inc., (hereinafter called "Con-tractor"), brought this suit against Defendant-Appellant City of San Antonio for specific performance of a public works contract calling for construction of a project known as "Nogalitos Storm Drainage Project No. 42." The contract, dated April 14, 1975, by definition consisted of the contract instrument proper, the plans, specifications, contract bonds and change orders.

Part of the work contemplated by the contract consisted of cutting up and excavating the existing pavement of several blocks of Nogalitos Street in the City of San Antonio, Texas. On or about June 3, 1975, the Contractor while digging up said pavement discovered that underneath the asphalt surface of the street was a concrete slab or base about six inches in thickness covering the entire length and breadth of that portion of Nogalitos Street included in the project. Learning this, the Contractor wrote a letter to the City dated June 6, 1975, advising the City that the Contractor expected to be paid for the cutting up and removal of this concrete base covering Nogalitos Street under Pay Item No. 103–B of the Project Specifications, entitled, "Remove Concrete Slab," same being at the bid unit price of 63¢ per square foot.

The City replied by a letter dated June 16, 1975 to the Contractor, denying that Contractor was entitled to be paid for this work under Pay Item 103–B, but stating that Contractor's entitlement to pay for this particular work came instead under Pay Item 104, "Street Excavation," wherein the bid unit rate called for $2.07 per cubic yard. This disagreement was never resolved; however, Contractor proceeded on with the work, and about six months after commencement of the project work, Contractor completed the excavation of Nogalitos Street called for by the contract by cutting up and removing some 156,000 square feet of concrete slab. For this portion of the work the Contractor asserted he was entitled to $96,929.03, which the City refused to pay; whereupon the Contractor brought suit against the City by way of specific performance for the aforesaid amount.

Trial was had to the court without a jury, after which the trial court entered judgment in favor of the Contractor against the City for specific performance of the contract, wherein the City was ordered to "perform in accordance with the contract and pay the plaintiff" $96,929.03 and costs. No findings of fact and/or conclusions of law were requested by the City and none were made by the trial court. From this judgment the City appeals. We affirm.

Both parties agree by statements in their respective briefs that the sole dispute in this case is whether such work accomplished by the Contractor hereinabove described should be paid for by the square foot unit price under Pay Item 103–B "Remove Concrete Slab" as contended by Contractor, or by the cubic yard unit price under Pay Item 104, "Street Excavation," as maintained by the City.

The Project Specifications for Pay Item No. 103 in its pertinent parts contain the following language:

## "ITEM NO. 103

### "REMOVE CONCRETE

"103.1 DESCRIPTION: The work covered by this section shall consist of breaking up, removing and satisfactorily disposing of existing concrete, as classified, at locations shown on the plans or as directed by the (City) Engineer.

"103.2 CLASSIFICATION: Existing concrete when removed under this section, will be classified as follows:

"1. 'Concrete Curb' (not applicable).

"2. 'Concrete Slabs' will include, but not be limited to patio slabs, porch slabs, paved slope (rip-rap), and traffic slabs.

"3. 'Sidewalks and Driveways' (not applicable).

"103.3 CONSTRUCTION METHODS: The existing concrete shall be broken up, removed, and disposed of by the Contractor.

. . . . .

"103.5 PAYMENT: This item will be paid for at contract unit price bid for . . 'Remove Concrete Slab' . . . .

"Payment will be made under: . . . .

"PAY ITEM NO. 103–B: Remove Concrete Slab Per Square Foot.

. . . .."

The quantity estimated by the City for Pay Item 103–B was 100 square feet. The Contractor bid 63¢ per square foot for this particular work.

The Project Specifications for Item 104, entitled, "Street Excavation" in its pertinent parts contain the following language:

## "ITEM NO. 104

### "STREET EXCAVATION

"104.1 DESCRIPTION: The work covered by this section consists of excavating and properly utilizing or otherwise satisfactorily disposing of all excavated material, of whatever character, within the limits of the work and the constructing, compacting, and shaping, and finishing of all earthwork on the entire length of the street and approaches to same in accordance with specification requirements herein outlined and in conformity with the required lines, grades, and typical cross sections, shown on the plans or directed by the Engineer.

"104.2 CLASSIFICATION: All excavation shall be unclassified, and shall include all materials encountered regardless of their nature or the manner in which they are removed, except those covered by pay items of this contract.

. . . .."

The City estimated 32,700 cubic yards to be excavated under Item 104, and the Contractor's bid price was $2.07 per cubic yard.

The entire written contract in question consisting of the contract instrument proper (labelled "Construction Contract"), plans, specifications, and attached instruments, is necessarily very lengthy, and most of same has no direct bearing on the controversy at hand. Therefore we will quote from, or make reference to, the following excerpts therefrom which we feel have a bearing upon the dispute, to wit:

1. Paragraph 3 of the contract instrument proper (the printed form contract labelled "Construction Contract") reads as follows:

"3. WORK UNDERSTOOD BY CONTRACTOR. Contractor declares that prior to the submission of his bid proposal on this contract he has thoroughly examined the location of the work to be performed, is familiar with local conditions, and has read and thoroughly understands the 'included instruments' as they relate to the physical conditions prevalent or likely to be encountered in the performance of the work at such location. Contractor hereby accepts such 'included instruments' as satisfactory in all respects to accomplish the proper performance of the work at the project site and accordingly assumes the risk of any delays or additional costs which might arise from errors or miscalculations in such 'included instruments' or from erroneous assumptions upon which same may have been predicated as to the physical conditions at the work site including, but not by way of limitation, latent defects or conditions of the subsoil."

2. Paragraph 4 under "General Conditions" in the Specifications portion again requires that bidders are required to thoroughly familiarize themselves with all aspects of the contract and the work, and then among other things provides: "Quantities included in the plans and proposal are estimated and are to be regarded as approximate only."

3. Then paragraph 6 under the heading "Materials" in the Specifications reads as follows:

"6. *Estimated Quantities and Measurement.*

"The estimated quantities of the various classes of work to be done and material to be furnished are approximate only and are given as a basis for comparison of proposals and award of contract. It is understood and agreed that the actual amounts of work to be done and material to be furnished may differ somewhat from these estimates. The quantities of work performed will be computed by the Engineer on the basis of measurements taken by the Engineer or his assistants, and these measurements shall be final and binding."

Mr. H. B. Heath, the president of Heath and Stich, Inc., testifying for the Plaintiff Contractor, testified that the Contractor had no knowledge that the entire area of Nogalitos Street encompassed by the contract was covered with a concrete base until on or about June 3, 1975, when work on the project commenced. There was evidence that the City knew of this concrete base situation prior to the time the contract was executed; however, the City never told the Contractor about it, nor were there any recitations concerning same in the contract, plans, or specifications. The City contends that Pay Item 103–B, "Remove Concrete Slab" called for an estimated quantity of 100 square feet because the City intended this to cover only the breaking up and removal of a paved slope of rip-rap located at one end of the project; however, there is nothing in the contract which says that this is what Pay Item 103–B is supposed to cover.

The City asserts the trial court erred in decreeing specific performance in favor of Plaintiff Contractor based upon payment to Plaintiff under Pay Item 103–B, and contends that payment for the work in question should have been paid for under Item 104, "Street Excavation." However, the City never offered any evidence as to how much money Plaintiff Contractor would have been entitled to, had the payment been computed as a part of Item 104.

In the case at bar, we are called upon to determine whether the Plaintiff Contractor is entitled to be paid under Pay Item 103–B for the concrete removal work in question, as determined by the trial court, or under Pay Item 104, as contended by the City. In order to make such a determination, we have the duty to interpret and construe a contract that at first blush appears to be ambiguous.

Our Supreme Court has held that a contract is not ambiguous if it is so worded that it can be given a certain or definite meaning or interpretation, and may be considered ambiguous only when the applica-

**60**

tion of pertinent rules of construction to the face of the instrument leave it genuinely uncertain as to which of two meanings is the proper meaning. *Universal C. I. T. Credit Corp. v. Daniel* (1951) 150 Tex. 513, 243 S.W.2d 154, 157; *Lewis v. East Texas Finance Co.* (1941) 136 Tex. 149, 146 S.W.2d 977, 980. Also see *Don Drum Real Estate Co. v. Hudson* (Dallas Tex.Civ.App.1971) 465 S.W.2d 409, no writ.

 In the case at bar, the contract in question appears on the surface to be ambiguous; however, we believe the apparent ambiguity may be resolved by the application of a well-settled rule of construction, to wit: that if general terms appear in a contract, they will be overcome and controlled by specific language dealing with the same subject. *Guadalupe-Blanco River Authority v. City of San Antonio* (1947) 145 Tex. 611, 200 S.W.2d 989, 1001; *Reynolds v. McMan Oil and Gas Co.* (Comm.App.1928) 11 S.W.2d 778, 782; *Scanlan v. Houston Lighting and Power Co.* (Galveston Tex.Civ. App.1933) 62 S.W.2d 537, 540, writ refused. Also see *Leopard v. Stanolind Oil and Gas Co.* (Dallas Tex.Civ.App.1949) 220 S.W.2d 259, 263, NRE; *Gulbenkian v. Penn* (Amarillo Tex.Civ.App.1953) 276 S.W.2d 939, 941, NRE; 13 Tex.Jur.2d, "Contracts," section 139, p. 319.

In the contract before us, Item 104, "Street Excavation" is general in nature, and covers "all excavated material, of whatever character, within the limits of the work," with the specific provision that "all excavation shall be unclassified, and shall include all materials encountered regardless of their nature or the manner in which they are removed, except those included in pay items of this contract."

On the other hand, Pay Item No. 103, "Remove Concrete," is specific in both its work description and classification. The work description provides that it shall consist of breaking up, removing, and satisfactorily disposing of existing concrete as classified; and that "Concrete Slabs" are specifically classified to include "traffic slabs."

We therefore are of the opinion and hold that Plaintiff Contractor was entitled to be paid for the work in question under Pay Item 103–B "Remove Concrete," and that accordingly the judgment of the trial court is correct.

In addition to the above, we believe there is another well-settled rule of construction that resolves the apparent ambiguity in favor of Plaintiff-Appellee Contractor, as follows: Where ambiguity exists in a contract, the agreement will be construed most strictly against the party who drafted it and thus was responsible for the language used. *Amory Manufacturing Co. v. Gulf, Colo. & Santa Fe Ry. Co.* (1896) 89 Tex. 419, 37 S.W. 856, 857. Also see *Smith v. McMillan* (Houston Tex.Civ.App.1961) 352 S.W.2d 871, 877, affirmed in part, 363 S.W.2d 437; *Ervay, Inc. v. Wood* (Dallas Tex.Civ.App.1963) 373 S.W.2d 380, 384, NRE; *Stowers v. Harper* (Tyler Tex.Civ. App.1964) 376 S.W.2d 34, 41, NRE; *Wolcott v. McWilliams* (Amarillo Tex.Civ.App.1964) 376 S.W.2d 49, 50, NRE; 13 Tex.Jur.2d, "Contracts," section 121, page 285. In the case at bar, it was the City who prepared the contract, plans, and specifications, and the application of this last-named rule of construction requires us to resolve the apparent ambiguity against the City as author of said contract.

For the reasons hereinabove set out, we affirm the trial court's judgment.

AFFIRMED.