**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**July 19, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-10582

_____

BARNARD CONSTRUCTION CO.,

Plaintiff - Appellant,

v.

CITY OF LUBBOCK,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 5:03-CV-269

_____

Before JONES, Chief Judge, WIENER, and PRADO, Circuit Judges.

PER CURIAM:[*]

I

Barnard Construction Co. ("Barnard") sued the City of Lubbock, Texas ("City") for breach of contract in the Northern District of Texas. The district court granted the City's motion for summary judgment, and Barnard appeals.

Barnard submitted the lowest bid for a pipeline construction contract to the City. The City hired an independent engineering company to act as "Engineer" for the project. The Engineer was

_____

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1

responsible for, <u>inter alia</u>, the bid form for the pipeline construction project. The bid form included a line item for rock excavation, but only for one of the fifteen pipelines (Line A1), because the Engineer's data suggested that rock excavation was needed only in the one pipeline. Prior to the bidding process, the City expressly stated that the Engineer's data was for informational purposes only, and that bidders had the opportunity to drill their own test holes. The City also offered a question and answer session prior to bidding and made changes to the pipeline construction contract via addenda as a result of the question and answer session. Barnard did not drill its own test holes.

Barnard and the City entered into a written contract. The City estimated that 410 cubic yards of rock would need excavating from Line A1; but whatever quantity of rock was excavated from Line A1, the City would pay Barnard at the unit price for which they bid ($200). In performance of the contract, Barnard discovered lines other than Line A1 required rock excavation as well. Barnard excavated rock from several lines other than Line A1. After Barnard billed the City for all rock excavated, the City initially paid, but later offset payment for rock excavated outside of Line A1. Barnard sued for breach of contract and on appeal argues for reversal of summary judgment. First, Barnard argues that the City's decision to pay for all rock excavated is a final, conclusive decision pursuant to the contract. In

2

response, the City maintains it had communicated to Barnard before or at the time of payment that it might later offset payment for rock excavated outside of Line A1.[1]  In addition, Barnard argues that the contract is unambiguous in its terms requiring payment of all rock excavated, or alternatively, that it is ambiguous thereby warranting reversal of summary judgment.

II

We review an appeal from summary judgment <u>de novo</u>, applying the same standard as the district court.  <u>Degan v. Ford Motor Co.</u>, 869 F.2d 889, 892 (5th Cir. 1989).  Summary judgment is appropriate if there is "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  Because this suit is based on diversity jurisdiction, we apply Texas substantive law to determine whether the City was entitled to summary judgment. <u>Fireman's Fund Ins. Co. v. Murchison</u>, 37 F.2d 204, 207 (5th Cir. 1991).

We review the interpretation of a contract, including the question of whether the contract is ambiguous, <u>de novo</u>. <u>Constitution State Ins. Co. v. Iso-Tex Inc.</u>, 61 F.3d 405, 407 (5th Cir. 1995) (citation omitted).

III

---

[1] Barnard contests the date this communication was made.

3

Barnard's first argument, that the City's decision to pay for all rock excavated is a final, conclusive decision pursuant to the contract, fails because the contract grants the City authority to make a final determination regarding the amount and quantity of work done by Barnard in excavating rock. Paragraph 47 of the General Conditions reads, in pertinent part:

> Any decision by the Owner's Representative, or deemed denial by the Owner's Representative, shall be final and conclusive in the absence of fraud.

Paragraph 14 of the "General Conditions of the Agreement," clearly states, in pertinent part:

> Unless otherwise specified, it is mutually agreed between the parties to this Agreement that the Owner's Representative has the authority to review all work included herein. The Owner's Representative has the authority to stop the work whenever such stoppage may be necessary to ensure the proper execution of the contract. The Owner's Representative shall, in all cases, determine the amounts and quantities of the several kinds of work which are to be paid under the contract documents, and shall determine all questions in relation to said work and the construction thereof, and shall, in all cases, decide every question which may arise relative to the execution of this contract on the part of said Contractor.

The record is clear that the City, via the Owner's Representative, told Barnard that it was only considering Barnard's request to pay for rock outside of Line A1.[2] Barnard

---

[2] While Barnard disputes the date on which the City informed Barnard that it would only consider the payment, the date is not dispositive; nor is the fact that the communication was made. The fact that Barnard was initially paid for the rock excavated outside of Line A1 is also irrelevant. The contract places authority over final decisions on the Owner's Representative. After reviewing the City's obligations under the contract, the City and the Owner's Representative correctly determined that it

does not allege the City has committed fraud in making this decision. The Owner's Representative made a final decision as to the amount and quantity of excavated rock for which Barnard was to be paid when it determined under the contract that it need not pay for rock excavated outside of Line A1.

IV

Barnard's second argument also fails. First, it argues that the contract is unambiguous thereby requiring payment for rock excavated outside of Line A1. Alternatively, Barnard argues the contract is ambiguous and therefore creates a genuine issue of material fact, requiring reversal and remand. Whether a contract is ambiguous is a question of law for the court to decide. Coker v. Coker, 650 S.W.2d 391, 394 (Tex. 1983). If the written contract is worded such that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 229 (Tex. 2003); Coker, 650 S.W.2d at 393. The court must give meaning to each of its provisions, in light of the circumstances surrounding the contract's execution, excluding statements of the parties as to what they intended. Davidson, 128 S.W.3d at 229; see also Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex. 1951).

---

need not pay for rock excavated outside of Line A1.

5

First, Barnard argues that the following circumstances, which they contend were not taken into account by the district court, existing at the time of execution, support its interpretation that the contract is unambiguous: (1) the City provided all the forms for the bidding process and did not allow any alteration of the form or negotiation of the terms; (2) no bidder could bid on a unit price for rock anticipated to be encountered except on the blank provided for rock excavation on Line A1; and (3) no bidder could increase an amount for work performed on one line in order to "pad" or "cover" unpaid work performed on another line. As the argument goes, because Barnard could not bid on rock outside of Line A1, it was irrelevant whether it took the opportunity to investigate the sub-surface conditions outside of Line A1. However, Barnard neglects to consider that the City did allow for an opportunity for the bidders to ask questions, a process through which the contract could be changed and through which addenda were added to the contract.

In the General Conditions section of the contract, under Paragraph 17, "Contractor's Understanding," it states:

> It is understood and agreed that the Contract has, by careful examination, satisfied itself as to the nature and location of the work, the confirmation of the ground, the character, quality and quantity of materials to be encountered, the character of equipment and facilities needed preliminary to and during the prosecution of the work, and the general and local conditions, and all other matters which in any way affect the work under the contract documents.

. . .

Unless otherwise specified herein, all loss, expense, or damage to Contractor arising out of the nature of the work to be done, or from the action of the elements, or from any unforeseen circumstance and the prosecution of the work, shall be sustained and borne by the Contractor at its own cost and expense.

Paragraph 17 of the General Conditions clearly places the risk of unforeseen circumstances on Barnard. See I.O.I. Sys., Inc. v. City of Cleveland, 615 S.W.2d 786, 789 (Tex. App. 1980). Barnard bore the risk in undertaking the project under the terms of the contract.

Arguing that the City's interpretation is unreasonable because it confers a windfall, Barnard maintains that Paragraph 1.6 of Section 01020 of the contract unambiguously mandates payment for rock excavation, including "all of the extra cost of equipment and labor associated with the excavation of rock over and above the excavation of nonrock materials in a tunnel or trench." Section 01020 is titled, "Measurement and Payment." Paragraph 1.6 appears in Part 1, titled, "General." The contract has both specific provisions, such as providing a line item for rock excavation only for Line A1, as well as general provisions, for example in Section 01020 in Paragraph 1.6 labeled "Rock Excavation," in which it states, "[p]ayment will be made at the unit price bid for Rock Excavation." Where a contract "appears on the surface to be ambiguous . . . the apparent ambiguity may be resolved by the application of a well-settled rule of

7

construction, to wit: that if general terms appear in a contract, they will be overcome and controlled by specific language dealing with the same subject." City of San Antonio v. Heath & Stich, Inc., 567 S.W.2d 56, 60 (Tex. App. 1978). The fact that the only place where a line item appears for rock excavation is for Line A1, a specific provision, suggests that the agreement between the parties was to pay for rock excavation only on Line A1. This interpretation of the contract is further supported by the provision in Section 01020 entitled "Scope," in which it states:

> The unit price bid on each item stated in the Bid Form shall include furnishing all labor, superintendence, machinery, materials, equipment and incidentals necessary to complete the various items of work in accordance with the plans and specification. Cost of work or materials shown on the plans and called for in the specifications for which no separate payment is made shall be included in the bid price on the various pay items.

(emphasis added). The contract clearly evinces a unit price for rock excavation only for the item Line A1.

As an alternative argument, Barnard argues that the contract is ambiguous. First, Barnard disagrees that the phrase "on each item stated in the Bid Form" in the "Scope" of Section 01020 is unambiguous. It points to the fact that this is a unit price contract because the City had to make estimations for each line item, including an approximate amount of rock to be excavated. Barnard maintains that the phrase "on the project" at the end of Paragraph 38, "Quantities and Measurements," found in the General

8

Conditions,[3] refers to the project as a whole, not to rock excavation on Line A1.  As the argument goes, the City is therefore required to pay Barnard for all rock excavated on the whole project.  Barnard states, "[t]he term 'project' is not defined by the contract, but 'Project Number' is identified throughout the contract as 'Project Number 293-6903 . . . ."  Barnard's invocation of Paragraph 38 is unavailing for the same reason its attempt to use Paragraph 1.6 of Section 01020 is.  The unit price bid blank found in Line A1 plainly evidences that the City expected drilling only on Line A1 and requested bids on rock excavation on that one line.[4]  Barnard ignores the fact that the City's estimate of 410 cubic yards of rock was only for Line A1, and not for all of the lines in total.  We find that the contract between Barnard and the City is not ambiguous in its terms that

---

[3] Paragraph 38 reads:

Where the estimated quantities are shown, and only when same are expressly stated to be estimates, for the various classes of work to be done and material to be furnished under this contract, they are approximate and are to be used only as a basis for estimating the probable cost of the work and for comparing their bids offered for the work.  In the event the amount of work to be done and materials to be furnished are expressly stated to be estimated, and only when same are expressly stated to be estimated, it is understood and agreed that the actual amount of work to be done and the materials to be furnished under this contract is the unit price method, payment shall be for the actual amount of work done and materials furnished on the project.

[4] It bears repeating that Barnard had the opportunity to drill its own test holes prior to bidding.  Instead, Barnard relied on the Engineer's data.

9

rock excavation would be paid only for that performed on Line A1.

V

For the aforementioned reasons, we AFFIRM the district court's grant of the City's summary judgment motion.

ENDRECORD

WIENER, Circuit Judge, dissenting:

I respectfully dissent from the panel majority's affirmance of the summary judgment for the City. I do so because I am convinced that summary judgment was granted despite the existence of a genuine issue of material fact which cannot be resolved under the summary judgment record that was before the district court and is now before us.[1]

None disputes that (1) a decision was made by the City on May 22 to pay Barnard for all rock excavation, whether inside or outside Line A1 —— and indeed, the City did pay for it —— but (2) on June 17, the City reversed that decision and deducted from the next periodic payment the portion of the prior payment attributable to excavation outside Line A1. The parties do vigorously contest, however, the correct way to classify the legal nature of the City's May 22 decision and payment. Barnard insists that under the terms of the construction contract, the May 22 decision was "final and conclusive," making it binding on the City and not subject to subsequent unilateral reversal or change by the City. In contrast, the City pays little heed to this issue; and the panel majority opinion demonstrates an unwillingness even to recognize the possibility that whether a particular decision by the City is "final and conclusive" is not simply whatever the City unilaterally

---

[1] Summary judgment may be granted, of course, only if "there is no genuine issue as to any material fact ...." FED. R. CIV. P. 56(c).

11

may say.[2]

The contract states that "[a]ny decision by the [City's] Representative ... shall be <u>final and conclusive</u> in the absence of fraud."[3]  Although neither a definition nor an explanation of "final and conclusive" appears in the contract, the phrase is used in it.  For example, the contract gives the City's representative authority to resolve "all questions of dispute or adjustment [that are timely] presented by the Contractor" to the City's representative.  Elsewhere in the contract, the City's representative is given the authority and duty to, "in all cases, decide every question which may arise relative to the execution of this contract."  Further, the contract deems each such decision to be "conclusive in the absence of written objection to same delivered to Owner's Representative within fifteen (15) calendar days of any decision or direction by [City's] Representative."

Here, there were (1) an initial decision by the City on May 15 to deny Barnard's request to be paid for all rock excavation; (2) a timely objection by Barnard to that decision; (3) a decision favorable to Barnard made by the City on May 22, reversing its May 15 decision and agreeing to pay Barnard for all excavation; and, finally (4) a third decision by the City, this one on June 17, purporting to reverse its own May 22 change of position from its

---

[2] <u>See</u> footnote 2 in panel majority opinion, <u>supra</u>.

[3] Emphasis added.

12

initial decision of May 15 —— a double flip-flop.

I do not question that the City, acting through its designated representative, had the right <u>vel</u> <u>non</u> to make the May 22 decision; but given that decision, I do question how the City could then, on June 17, make a contrary decision on the same discrete issue.  I have found no principled way to interpret <u>final and conclusive</u> —— at least not without making this construction agreement a contract of adhesion —— to mean anything other than that an officially made, <u>unqualified</u> and <u>unconditional</u> decision by the City on any given issue, at any stage of the construction, is not merely <u>final and conclusive</u>, but is also just as unilaterally <u>irreversible</u> by, and <u>binding</u> on, the City as it is on Barnard.  As the contract is the law between the parties, contractual interpretation must provide the answer to the key question, "which of the City's diametrically opposed, sequential decisions regarding rock excavation was the final and conclusive one, and was therefore irrevocably and irreversibly binding on both parties?"

The summary judgment record makes clear, and none disputes, the relevant sequence of events.

- On May 15, the City made a "decision" to deny Barnard's request to be paid for all rock excavation, not just that in Line A1.

- Barnard timely objected to that denial.

- On May 22, the City made a "decision" to reverse its May 15 decision and to pay for all rock excavation (which it did).

Thus, when we interpret the contract as a whole, with all relevant

13

provisions considered in pari materiae, this second "decision" by the City, the one on May 22 to reverse its May 15 decision and pay Barnard for all rock excavation, had to be "final and conclusive" — unless, that is, the May 22 decision was expressly made subject to the putative condition subsequent, reserving to the City the power to reconsider and again reverse itself. Unlike the May 15 decision which was timely contested by Barnard pursuant to the contract, the May 22 decision was not contested or appealed by either party. Rather, the City just changed its mind weeks later. Crucially, then, for the May 22 decision not to be final and conclusive, and thus remain reversible by the City, this condition subsequent would have to have been made by the City and communicated to Barnard (1) in the May 22 decision, (2) before that decision was made, or (3) contemporaneously with that decision. Conversely, any subsequent attempt by the City to make its May 22 commitment reversible would have been too late and thus ineffectual to render the May 22 decision anything other than final and conclusive.

It follows that if, on the one hand, the question when that condition subsequent was made and communicated to Barnard is ultimately found to have been in the May 22 decision, or on or before May 22, then that decision would not have been "final and conclusive," and the City would be entitled to change its mind, as it purported to do on June 17. But if, on the other hand, the fact ultimately found is that communication of the reserved right to

14

change its mind was <u>not</u> made by the City <u>in, before, or contemporaneously with</u> its May 22 decision, but only thereafter, the May 22 decision <u>would</u> be a "final and conclusive" decision <u>on that one point</u>, viz., to pay Barnard for all rock excavation. This is why the answer to the question whether the May 22nd decision was final and conclusive and therefore not subject to a unilateral, <u>post-hoc</u> change of position by the City (as the City purported to do on June 17), <u>is</u> the crucial "genuine issue of material fact" on which this contract dispute turns.

The panel majority appears to accept as a given the City's representation to this court that "it had communicated to Barnard before or at the time of payment that it might later offset payment for rock excavated outside of Line A1." Yet the majority opinion also concedes that "Barnard contests the date this communication was made."[4] In the face of these irreconcilably opposed factual contentions of the parties, I cannot conclude, as did the district court and the panel majority, at least implicitly, that no genuine issue of material fact exists regarding the timing or sequence of the City's reservation of that condition subsequent. Instead, I remain convinced that this material fact question cannot be resolved on the basis of the summary judgment record, either by the district court or by this court on <u>de novo</u> review. Here's why.

In granting summary judgment, the district court stated as a

---

[4] <u>See</u> footnote 1 in panel majority opinion, <u>supra</u>.

15

given that Barnard was "forewarned"[5] ── shorthand for Barnard was informed of the condition subsequent by the City, before, in, or contemporaneously with its May 22 decision to pay Barnard for all rock excavation. If that turns out to be how it happened, I would agree that the May 22 decision was conditional, preventing it from being deemed final and conclusive, and thus making it subject to reconsideration and change by the City. I repeat for emphasis, however, that the district court's conclusional statement that Barnard was "forewarned" simply is not supported by the summary judgment record, without which support that material fact issue remains genuinely contested and unresolved.

By the district court's own declaration, its determination that Barnard was "forewarned" by the City is based solely on one individual's affidavit. The problem is that the affidavit nowhere states, mentions, adverts to, or implies either (1) the precise calendar date of the City's making and communicating the condition subsequent, or (2) the relative timing of that communication vis-à-vis the notification to Barnard of the City's May 22 decision to pay for all rock excavation (itself a turn around from its May 15 decision not to pay). Whether Barnard was or was not "forewarned" remains an open genuinely contested issue of material fact.

If this panel had reversed and remanded, the City as movant might well have been able to supply evidence of such date or timing

---

[5] Emphasis mine.

16

to show that Barnard was indeed "forewarned"; and it might well be that Barnard would not have been able to controvert it.  But, without a summary judgment record sufficient to support the absence of a genuine issue of material fact, we should not affirm the summary judgment here being appealed.  This is why, with genuine respect for my colleagues of the panel majority and for the district court, I am compelled to dissent.