cv1-517 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-517-CV





FOWLER, OWENS AND HANSEN, JUDY FOWLER AND TED HANSEN,



 APPELLANTS


vs.





BARBARA VACKER COOKE AND WALTER VACKER,



 APPELLEES



 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT



NO. 467,906, HONORABLE JOSEPH H. HART, JUDGE PRESIDING



 





 Fowler, Owens, and Hansen, a Texas General Partnership, and Judy Fowler and
Ted Hansen individually ("Appellants" in this court; defendants/counter-plaintiffs below) appeal
from a judgment holding them liable for unpaid lease payments. Barbara Vacker Cooke (1) and
Walter Vacker ("Appellees" in this court; plaintiffs/counter-defendants below) by cross-point seek
remand for additional damages under the lease late-payment clause. Appellees also challenge by
cross-point the judgment awarding Appellants damages on their counterclaim for usury under a
promissory note and promissory note agreement. Appellants seek remand for additional damages
on their usury claim. We will affirm the judgment of the trial court.



BACKGROUND


 On July 14, 1986, Fowler, Owens and Hansen leased two condominium units from
Walter Vacker. The lease term was two years beginning on September 1, 1986. Appellants were
to use the units as office space for their real estate leasing and brokerage business. Payments
under the lease were $2,648 per month.

 Appellants made the lease payments for the first four months, but failed to do so
for the next five months. Barbara Vacker Cooke became the sole owner of the condominium units
in early 1987. She wrote Appellants a letter dated May 21, 1987, informing them of this
development and asking for discussions regarding transfer of the lease and method of payment for
the past-due rent. The parties apparently reached an agreement that Appellants would vacate the
premises and would pay five months of unpaid rent, without any late charges, to the Appellees.

 On June 30, 1987, Barbara Vacker Cooke wrote Appellants another letter which
referred to the parties' agreement that Appellants would vacate the premises by July 5th. This
letter stated that the amount of past-due rent was $13,240. She asked Appellants to have their
proposal for payment of these rents ready by July 5th as well.

 The past-due lease rental payments were reduced to a promissory note ("Note") and
promissory note agreement ("Agreement") dated July 1, 1987, made payable to Appellees and
executed by Fowler, Owens and Hansen as a partnership and by the partners individually. Under
the Note, Appellants were to pay the principal amount of $13,240 to Barbara Vacker Cooke and
Walter Vacker. The Note provided that the annual interest rate on unpaid principal was ten
percent, and that the annual rate on matured unpaid amounts would be the "HIGHEST RATE
ALLOWED BY LAW." Payments were to be in monthly installments of $1,000 principal plus
interest as noted on the attached Agreement. The Note contained the following "savings clause": 
"Nothing in this Note shall authorize the collection of interest in excess of the highest rate allowed
by law."

 The attached Agreement laid out a schedule of payments beginning on August 1,
1987, and ending on September 1, 1988. Payments were due on the first of the month. The
Agreement contained a late payment penalty clause for payments made after the fifth of each
month that required payment of an additional five percent of the balance due plus twenty dollars
a day for each day the payment was late. The Agreement also stated that, in the event of default,
Appellees would be entitled "to pursue all remedies in accordance with Texas Law."

 Appellants made no payments under this Note and Agreement. The Note matured
without being accelerated at any time. Appellees sent at least two demand letters, one on April
11, 1988, and another on May 4, 1988, to Appellants to collect payments under the Note.



Trial and Judgment

 Appellees filed suit on July 6, 1989, to collect amounts due under the Note and
Agreement. Judy Fowler and Ted Hansen counterclaimed for usury. (2) As a result of the usury
counterclaim, Appellees amended their petition to seek damages under the lease for nonpayment
of rents. Because the usury laws apply only to money-lending contracts and not to leases,
Appellees defended the usury claim by characterizing the Note and Agreement as a lease workout
and not as a contract to lend money.

 In a trial to the court, the trial court rendered judgment in favor of both the
Appellees on their claim for unpaid rent and in favor of Appellants on their counterclaim for
usury. In findings of fact and conclusions of law, the trial court found that the property
description in the lease satisfied the statute of frauds and that Appellants breached the lease. The
trial court awarded damages for unpaid rent to Appellees in the amount of $52,960 and attorney's
fees of $15,000. The trial court concluded that the provision for late charges in the lease was a
penalty and not a valid liquidated damages clause and, therefore, denied any recovery under it.

 Additionally, the trial court found that the Note was a contract to lend money and,
therefore, the usury laws applied. The trial court concluded that the Note was supported by
sufficient consideration; that the Note was usurious on its face such that the savings clause was
ineffective to prevent usury; and that a portion of the late charge provision was ambiguous. The
trial court found the "5% of the balance due" part of the provision was unambiguous in that it
clearly applied to the whole principal balance. However, the trial court found the "plus $20.00
a day" portion of the provision ambiguous noting that it could apply to any period of default, no
matter how many payments were actually late, or could be "stacked" each month that payments
were late. The trial court found, after admitting and considering parol evidence on the issue, that
the parties intended the twenty dollar charge to be calculated on a per-diem basis from the date
of the first late payment, and did not intend for an additional twenty dollars per day to be charged
upon the failure to pay any additional installments. The trial court awarded damages on the usury
counterclaim for $90,657.18 plus $20,000 in attorney's fees.



CONTENTIONS ON APPEAL


 Appellants argue that the trial court erred as a matter of law in finding that the
property description in the lease was sufficient to satisfy the statute of frauds. Appellants also
contend that the damage award for usury was inadequate; that no evidence or, alternatively,
insufficient evidence exists to find part of the Agreement's late charge provision ambiguous; and
that the trial court erred in admitting parol evidence to clarify the ambiguity.

 Appellees in their cross-points argue that the trial court erred in finding there was
a lending transaction instead of a modification of the lease agreement; in finding that there was
consideration to support the Note and Agreement; in finding that the savings clause was
ineffective; and in finding that the late charges in the lease agreement were unenforceable
penalties.



DISCUSSION


The Lease

a.  Sufficiency of description of leased property 

 Appellants pose the initial question we must answer: Was the property description
in the lease sufficient to satisfy the requirements of the statute of frauds? Leases for a term of
more than one year must be in writing. Tex. Bus. & Com. Code Ann. § 26.01(b)(5) (West 1987). 
A description of leased premises is sufficient if the property may be identified from it, or if the
description contains a statement, key or data from which the property may be identified. Blum
v. Dismuke, 314 S.W.2d 635, 640 (Tex. Civ. App.--Houston 1958, writ dism'd).

 The lease between Appellees and Appellants contains a legal description of the
leasehold. This legal description, however, describes all six of the condominiums developed at
that site by Walter Vacker and not just the two units leased to Appellants. The lease further
designates "1711 Rio Grande" as the "Address in [the] Project" leased to Appellants. Finally, the
lease describes the leased premises as containing approximately 2,648 square feet, and notes
"Office Space" as the permitted use.

 Appellants cite the Declaration of Condominium (3) filed by Walter Vacker as
evidence that the description in the lease does not sufficiently describe the two leased units alone. 
However, the Declaration of Condominium clearly indicates that the units in question are in a
separate building from the building containing the other four units on the site. The street address
given in the lease refers only to the two leased units. Anyone looking for that address would find
the building containing the two units Appellants leased, used as office space, and containing about
2,648 square feet. Because we conclude the description is sufficiently definite, we overrule
Appellants' first point of error.



b.  Validity of lease late payment charge

 Appellees assert by their fourth cross-point of error that the trial court erred in
finding the that the lease late charge provision was an unenforceable penalty and not a valid
liquidated damages clause. To be valid, a liquidated damages clause must meet two requirements. 
First, actual damages for breach of the contract must be difficult or impossible to estimate and,
second, the stipulation must be a reasonable forecast of the amount of actual damages. Phillips
v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991); Stewart v. Basey, 245 S.W.2d 484, 486 (Tex.
1952).

 Whether a contract contains a valid liquidated damages clause or an unenforceable
penalty is a question of law for the court to decide. Phillips, 820 S.W.2d at 788. The court may
have to resolve fact issues before it can make the legal determination of the clause's validity. Id. 
As an example, the court in Phillips said that a defendant in a breach-of-contract action may have
to show that the actual damages suffered were much less than those contracted for in order to
prove the unreasonableness of the provision. Id.

 Appellees contend that Appellants had to prove the amount of actual damages
Appellees suffered. This amount must then be compared to the amount of damages stipulated to
show the unreasonableness of the latter. Appellees imply that Appellants failed to carry their
burden of proof and, therefore, the trial court erred in finding the lease's late charge provision
to be an unenforceable penalty. (4)

 Barbara Vacker Cooke testified at trial that damages for breach of the lease were
easy to calculate. She further testified that actual damages for the breach were $52,960. (5) This
amount is precisely what the trial court awarded to Appellees for breach of the lease. Both of
these statements were against her pecuniary interest. A party's testimonial declarations which are
contrary to that party's position on a disputed issue are quasi-admissions which, although not
binding on the party as a judicial admission, constitute some evidence. Mendoza v. Fidelity &
Guar. Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980); City of El Paso v. Public Util.
Comm'n, 839 S.W.2d 895, 907 (Tex. App.--Austin 1992, writ requested). It is for the trier of fact
to determine the weight to be assigned to a quasi-admission. Mendoza, 606 S.W.2d at 694.

 The quasi-admissions of Barbara Vacker Cooke are sufficient evidence from which
the trial court could conclude that the stipulated amount was unreasonable because actual damages
were easy to calculate, and the amount stipulated was unreasonably higher than the amount of
actual damages. We therefore overrule Appellees' fourth cross-point of error.


 

The Promissory Note and Promissory Note Agreement

a.  Nature of the contract

 Appellees contend that the trial court erred in finding the Note and Agreement to
be a money lending contract and not a lease modification and workout agreement. Appellees are
correct when they state that a usury claim cannot arise out of a lease. We agree that under Texas
law, a lease is not a contract to lend money. See Tygrett v. University Gardens Homeowners'
Ass'n, 687 S.W.2d 481, 483 (Tex. App.--Dallas 1985, writ ref'd n.r.e.); Maloney v. Andrews, 483
S.W.2d 703, 704 (Tex. Civ. App.--Eastland 1972, writ ref'd n.r.e.). Usury laws only apply to
money lending contracts. Stedman v. Georgetown Sav. & Loan Ass'n, 595 S.W.2d 486, 489
(Tex. 1979) (for usury to apply, there must be an overcharge by a lender for the use, forbearance
or detention of the lender's money.); Crow v. Home Sav. Ass'n of Dallas County, 522 S.W.2d
457, 459 (Tex. 1975) ("It is a fundamental principle governing the law of usury that it must be
founded on a loan or forbearance of money; if neither of these elements exist, there can be no
usury."); Parks v. Lubbock, 51 S.W. 322, 323 (Tex. 1899). The usury statute by its terms applies
to transactions where "interest" is charged. Tex. Rev. Civ. Stat. Ann. art. 5069-1.06 (West
1987). Interest is defined in the statute as compensation for the use, forbearance or detention of
money. Tex. Rev. Civ. Stat. Ann. art. 5069-1.01a (West 1987).

 Appellants' counterclaim for usury is based on the Note and Agreement that were
executed as a method for paying money already due to the Appellees. Appellees allowed
Appellants to "use" the money owed to them for fourteen months. It makes no difference that the
debt arose from nonpayment of delinquent lease payments. Appellants owed Appellees over
thirteen thousand dollars, and the Note allowed Appellants the use of that money during the term
of the Note. Barbara Vacker Cooke's letter of June 30th to Appellants requested that the premises
be vacated and a "proposal for payment" of past due rents be ready by July 5, 1987. No attempt
was made in court to collect the delinquent lease payments. The Note and Agreement substituted
for any such collection action. The parties contemplated Appellants' use of the amount due under
the terms of the lease. The trial court correctly determined that this was a money-lending contract
to which the usury laws apply. We therefore overrule Appellees' first cross-point of error.



b.  Sufficiency of the consideration for the Note and Agreement

 Appellees' second cross-point of error alleges that the trial court erred when it
found there was sufficient consideration to support the Note and Agreement. The Texas Uniform
Commercial Code (UCC) distinguishes between "value" and "consideration" throughout Article
Three. Tex. Bus. & Com. Code Ann. § 3.408 Cmt. 1 (West 1968). "Consideration" refers only
to what the maker of the note has received for his promise to pay, "and is important only on the
question of whether his obligation can be enforced against him." Id. (emphasis added). We note
at the outset that lack of or failure of consideration are defenses to an action to collect on a note. (6) 
See West Coast Mining, Inc. v. Security Nat'l Bank, 442 S.W.2d 821, 822 (Tex. Civ.
App.--Amarillo 1969, writ ref'd n.r.e.). Appellees are not in a position to assert that the note was
without consideration when Appellants, as makers, contend that consideration was adequate.

 Even, assuming that Appellees could make such a claim, we find that consideration
was adequate. The Note and Agreement represented payment of the preexisting obligation of
Appellants to pay the five months of past-due rental payments. Under the Texas UCC, "[N]o
consideration is necessary for an instrument . . . given in payment of . . . an antecedent obligation
of any kind." Tex. Bus. & Com. Code Ann. § 3.408 (West 1968) (emphasis added). The official
comment to section 3.408 says in part:



The "except" clause is intended to remove the difficulties which have arisen where
a note . . . is given as payment . . . for a debt already owed by the party giving it.
. . . The provision is intended to change the result of decisions holding that where
no extension of time or other concession is given by the creditor the new obligation
fails for lack of consideration.



Tex. Bus. & Com. Code Ann. § 3.408 Cmt. 2 (West 1968) (emphasis added).

 Appellees contend that they gave Appellants an extension of time to repay the five
months of past due rent. If that were true, then Appellants would have been given consideration
for their promise to pay and the note would be enforceable against them. According to comment
1 of section 3.408 quoted above, the issue of enforceability against the maker is the only one
consideration is meant to resolve. We have concluded that the Note constituted an arrangement
for paying a preexisting debt, not an instrument to extend time for paying the debt. Thus, the
statute requires no consideration. Even if Appellees are correct that they granted Appellants an
extension of time to pay the debt owed, the extension of time was adequate consideration to
Appellants for their promise to pay. In either event, the trial court was correct to hold the
promissory note valid against Appellees' claims that there was no consideration to support the
note. We therefore overrule Appellees' second cross-point of error.



c.  Ambiguity in the Agreement's late payment penalty clause

 Appellants contend in points of error two through four that the late payment penalty
in the Agreement was not ambiguous; that the trial court erred in finding the twenty dollars per
day provision ambiguous because no evidence or insufficient evidence exists to support that
finding; and that the trial court erred in admitting, over objection, parol evidence to clarify the
perceived ambiguity.

 The goal of the court in interpreting a written contract is to discern the actual intent
of the parties expressed in the contract. Reilly v. Rangers Management., Inc., 727 S.W.2d 527,
529 (Tex. 1987); Coker v. Coker, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is
ambiguous is a question of law for the court to decide by looking at the whole contract in light
of the circumstances present at the time it was entered into. Coker, 650 S.W.2d at 394. The
language used in the contract should be given its plain grammatical meaning unless doing so
would definitely defeat the intention of the parties. Reilly, 727 S.W.2d at 529. If the contract is
so worded that it can be given a certain legal meaning or interpretation, then it is not ambiguous. 
Coker, 650 S.W.2d at 393; Universal C.I.T. Credit Corp. v. Daniel, 243 S.W.2d 154, 157 (Tex.
1951). A contract is ambiguous when its meaning is uncertain or doubtful, or it is reasonably
susceptible of more than one meaning. Coker, 650 S.W.2d at 393 (emphasis added). "Courts will
avoid when possible and proper a construction which is unreasonable, inequitable, and
oppressive." Reilly, 727 S.W.2d at 530.

 The late payment charge in the Agreement stated:



If payments are not received by [Barbara Vacker Cooke and Walter Vacker] on or
before the fifth of the month, [Fowler, Owens, and Hansen] shall pay an additional
late charge to [Barbara Vacker Cooke and Walter Vacker] in the amount equal to
five percent (5%) of the balance due plus $20.00 for each day thereafter until such
payment is paid.



The trial court concluded that five percent of the balance due was unambiguous. In finding-of-
fact number twenty-three, the trial court found that that part of the provision applied to the entire
principal balance due under the Note for each payment not made. Appellees have not challenged
either of these findings by cross-point, but in their reply to Appellants' points of error, they assert
that the five percent was meant to apply only to the installment due. 

 At trial, Appellees stated that the late payment charge in the Agreement was
modeled after the late charge provision in the lease which said that Appellants were to pay five
percent of the "monthly rent" due and twenty dollars a day until "such monthly rent is paid." 
Appellees, who drafted both the lease and the Agreement, clearly knew how to make the five
percent charge relate only to the installment due, but apparently decided not to do so in the
Agreement. From the record it appears that the trial court was correct in its conclusion that this
part of the provision was unambiguous, and that it referred to the entire principal amount due.

 Appellants argue that the second part of the late payment charge was as
unambiguous as the first part, and that the trial court erroneously found otherwise. They argue
that "plus $20.00 for each day thereafter until such payment is made" clearly means that an
additional twenty dollars per day will be charged ("stacked") every month that payment is not
made and every month that those payments remain unpaid. They further contend that applying
this part of the charge to only the first breach is contrary to the plain language of the clause and
results in separate applications of parts of the same clause. In their view, applying the first part
of the clause (five percent of the balance due) to every missed payment, but applying the second
part of the clause (plus twenty dollars per day until paid) to only the first missed payment is
inconsistent and constituted error by the trial court. 

 We agree that the clause cannot be read to apply to only the first late payment. 
However, we do not agree that this is what the trial court found. We believe the trial court found
that the twenty dollars per day is to be paid during any period of default. In the instant case, there
was only one default, which began with the very first late payment.

 We agree with the trial court's finding that the clause is ambiguous. On its face,
the clause can be read to mean that the twenty dollar per day late charges would be "stacked," or
to mean that the charge would remain twenty dollars no matter how many payments were late. 
However, a finding that an additional twenty dollars per day was to be charged as each payment
became overdue would be unreasonable and oppressive. (7) We are required to avoid this kind of
unreasonable interpretation if it is possible and proper. See Reilly, 727 S.W.2d at 530. The trial
court did not err in considering parol evidence regarding construction of the late payment clause. 
Where a contract is first found to be ambiguous the court may consider extrinsic evidence
concerning the interpretation of the parties. Sun Oil Co. (Delaware) v. Madeley, 626 S.W.2d
726, 733 (Tex. 1982).

 The parol evidence considered supports the more reasonable of the two potential
meanings of the late charge provision. If more than one payment was late, the charge would
remain twenty dollars per day throughout the period of default. This is a reasonable interpretation
of the contract language which preserves the integrity of the late payment clause, and makes it
applicable to any and all late payments. The trial court correctly found that the twenty dollars per
day was to be charged from the date of the initial default without subsequent "stacking." We
therefore overrule Appellants' points of error two through four.



d.  Effect of the "savings clause" 

 Appellees assert by cross-point that the trial court was in error when it found that
the savings clause was ineffective, because the Note is not usurious by its terms. The parties
contracted for a rate of ten percent interest on the principal amount, and the "HIGHEST RATE
ALLOWED BY LAW" for matured unpaid amounts. This constitutes a written agreement or
stipulation under the usury statute which brings the contract within the provision allowing up to
eighteen percent interest. See Tex. Rev. Civ. Stat. Ann. art. 5069-1.04a, b (West 1987).

 This is a "contracting for usury" case. Appellants alleged that the Note and
Agreement were usurious on their face. The Texas Supreme Court spoke regarding the
effectiveness of savings clauses many years ago. It said:



Of course, we do not mean to hold that a person may exact from a borrower a 
contract that is usurious by its terms, and then relieve himself of the pain and
penalties visited by the law upon such an act by merely writing into the contract
a disclaimer of any intention to do that which, under his contract, he has plainly
done.


 

Nevels v. Harris, 102 S.W.2d 1046, 1050 (Tex. 1937). Although the court upheld the savings
clause in Nevels, subsequent cases have held that a savings clause only saves contracts that are not
usurious by their terms. See Terry v. Teachworth, 431 S.W.2d 918, 926 (Tex. Civ.
App.--Houston [14th Dist.] 1968, writ ref'd n.r.e.) ("But Appellants cannot charge usurious
interest and then escape the penalties by disclaiming an intention to do what they had plainly
done."). To be ineffective, however, a savings clause must be directly contrary to the explicit
terms of the contract. First State Bank v. Dorst, 843 S.W.2d 790, 793 (Tex. App.--Austin 1992,
writ requested).

 Appellees merely assert that the note is not usurious by its terms in their cross-point. They argue that the late payment clause was ambiguous and that their intent was not to
charge usurious interest. Having lost this argument in the trial court, they have not urged on this
appeal why the Note was not usurious and, therefore, we cannot say that the trial court was in
error when it found the savings clause to be ineffective. We therefore overrule Appellees' third
cross-point of error.





CONCLUSION


 For the reasons stated above we affirm the judgment of the trial court.



 

 Mack Kidd, Justice

[Before Chief Justice Carroll, Justices Jones and Kidd]

Affirmed

Filed: April 7, 1993

[Do Not Publish]

1.   At the time the lease and promissory note were executed, Barbara Vacker Cooke's
name was Barbara Vacker.
2.   Tom Owens assigned his interest in the usury counterclaim to the other two
partners.
3.   A Declaration of Condominium must be filed in the "Condominium Records" of the
county in which the condominiums are located. Condominium Act, Tex. Prop. Code
Ann. § 81.103(a) (West 1984). The declaration must contain several items, including a
complete description of the real property, the buildings on the property, and a general
description of each apartment. Tex. Prop. Code Ann. § 81.102 (a)(1), (2) (West 1984).
4.   Thus stated, this cross-point of error is actually a "no evidence" or "insufficient
evidence" point of error. Even though the point of error was inappropriately stated, we
are required to review each attack on the trial court's finding in its proper context. 
O'Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 113-14 (Tex. 1976). In deciding a no-evidence
point, we must consider only the evidence and inferences tending to support the fact finder and
disregard all evidence to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593
(Tex. 1986), cert. denied, 111 S. Ct. 135 (1990). When reviewing a finding to determine the
factual sufficiency of the evidence, we must consider and weigh all the evidence and should set
aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).
5.   This amount is twenty months of unpaid rent at $2,648 per month. Appellees were
apparently seeking this amount plus the amount of the total late charges. They calculated
the daily late charge from January 10, 1987, through January 15, 1991, (1,465 days) to be
$29,300. They calculated the 5% charge on delinquent installments to be $703.31. The
total amount sought for breach of the lease was $82,963.31. The trial court found this
amount to be unreasonable when contrasted with the quasi-admission that actual
damages for breach of the lease were the unpaid lease payments only.
6.   Appellees attempted to use the issue of "consideration" offensively in this case
because their Note and Agreement were the basis of Appellants' usury counterclaim. 
Thus, if the Appellees could prevail on their consideration argument, the Note and
Agreement would have been void and they could not have been liable, as a matter of law,
for usury.
7.   Calculating five percent of the principal balance for every month a payment was
missed and stacking the twenty dollar charges for every missed payment, would result in
interest of $246,313.85 on a $13,240 original principal balance.