Michael A. REILLY, Petitioner,

v.

RANGERS MANAGEMENT, INC. et al., Respondents.

No. C–5926.

Supreme Court of Texas.

April 1, 1987.

Rehearing Denied May 6, 1987.

Robert H. Mow, Jr. and Paul M. Koning, Hughes & Luce, Dallas, for petitioner.

John B. McAdams, Kelly, Appleman, Hart & Hallman, Fort Worth, for respondents.

SPEARS, Justice.

This case involves the validity of certain amendments to a limited partnership agreement. The trial court granted summary judgment holding that the amendments were valid as a matter of law. The court of appeals affirmed the judgment of the trial court, 717 S.W.2d 442. We reverse the judgment of the court of appeals and remand this cause for trial.

In 1974, Texas Rangers, Ltd. (TRL), a limited partnership, was created to purchase and operate an American League baseball franchise known as "The Texas Rangers." At that time, Rangers Management, Inc. (RMI) was the sole general partner and Michael A. Reilly (Reilly) was a limited partner. In 1980, RMI and the limited partners unanimously approved amendments to the limited partnership agreement which resulted in the "First Amended Agreement of Limited Partnership of the Texas Rangers, Ltd." (first amended agreement). One of these amendments allowed the admission of a second general partner, CCK, Inc. (CCK).

On March 13, 1984, RMI and CCK, which then owned 83.78% of the limited partnership units, proposed several amendments to the first amended agreement. The amendments were approved by 88.49% of the limited partnership units. The validity of two of these amendments is the subject of this litigation and appeal. The first would change the number of authorized units of TRL from 300 to an unlimited number. The second would change the minimum capital contributions for newly issued units of TRL from $50,000 to their fair market value to be determined by the managing general partner, RMI, on an annual basis.

Shortly after the alleged adoption of the amendments, RMI and CCK notified the limited partners of their intention to purchase 100 new partnership units at a price, established by RMI, of $10,000 per unit. Each limited partner was given seven days to exercise his preemptive rights to the newly issued units. If the limited partner chose not to exercise his preemptive rights, his percentage of the profits of TRL would be lowered.

Reilly objected to the validity of the amendments, the issuance of the new units, and the dilution of his interest. RMI and CCK then sued for a declaratory judgment under Tex.Rev.Civ.Stat.Ann. art. 2524–1 (repealed 1985) *now codified* at Tex.Civ. Prac. & Rem.Code § 37.004 (Vernon 1986), to have the amendments declared adopted and to have the "Second Amended Limited Partnership Agreement" (second amended agreement) declared to be in full force and effect. Both parties moved for partial summary judgment. The trial court overruled Reilly's motion and granted partial summary judgment for RMI and CCK. The court of appeals affirmed the judgment of the trial court.

The trial court and court of appeals interpreted Article XV of the first amended agreement to require that only 66⅔% of the units approve these particular amendments. Article XV of the agreement provides in relevant part:

C. *Unanimous Consent of Limited Partners.* Subject to the provisions of ARTICLE IV hereof, any amendment to this Agreement which would adversely affect the general liabilities of the Limited Partners, or change the method of allocation of the profits or losses or the distribution of the Partnership funds or assets shall require the consent in writing of all Limited Partners.

D. *Two-Thirds Consent of Partners.* Subject to the provisions of ARTICLES XII and XIV hereof, any other amendments to this Agreement shall require the approval in writing of Partnership Percentages aggregating sixty-six and two thirds percent (66⅔%).

The court of appeals held that the passage of these amendments was governed by Article XV(D) rather than (C) of the first amended agreement because the "allocation of profit and losses" and "distribution" terms from Article XV(C) were headings of Article VIII(A) & (B). Article VIII provides:

A. *Allocation of Profits and Losses.* The profits and losses of the Partnership as well as each Partner's separate distributive share of all taxable income,

gains, losses, deductions and credits of the Partnership shall be allocated to the Partners as follows:

(1) To the Managing General Partner that portion equal to an amount which is the result of multiplying the percent of Units owned by such Managing General Partner in the Partnership times one hundred fifty percent (150%) or its percentage of the total Units in the Partnership plus 7.5% of total profits and losses, whichever is less.

(2) To the Limited Partners and General Partners other than the Managing General Partner, the remaining share, after subtracting that allocated to the Managing General Partner, in proportion to each such Partner's Units to total Units owned by such partners.

B. *Distributions.* The Managing General Partner shall at all times maintain such liquid assets in the Partnership, as in his judgment shall be necessary to provide for the Partnership's operations, capital and expansion requirements, liabilities, debt service and contingencies of the Partnership and as may be required by any agreement to which the Partnership may be a party. Subject to the foregoing, the Managing General Partner may make cash distributions to the Partners at such times and in such amounts as the Managing General Partner may determine in his sole discretion; provided, however, that in no event shall any distribution be made in violation of the Texas Act. Such distributions shall be allocated to the Managing General Partner and to the other Partners in the same proportions as profits and losses are allocated as described in Paragraph A of Article VII hereof.

The court of appeals held that only amendments which "change" Article VIII require unanimous approval and that these amendments did not "change" Article VIII.

■ Reilly argues that the first amended agreement is at least ambiguous concerning whether the passage of these amendments is governed by Article XV(C) or (D). Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances existing at the time the contract was entered into. *Coker v. Coker,* 650 S.W.2d 391, 394 (Tex.1983). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument is a question of fact for the jury. *Id.* In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984). Every reasonable inference from the evidence must be indulged in favor of the non-movant and any doubts resolved in his favor. *Id.*

The similarity in language between Article VIII and Article XV raises a fact issue as to whether the amendment's passage is governed by Article XV(C) or (D). *See City of San Antonio v. Heath & Stich, Inc.,* 567 S.W.2d 56, 60 (Tex.Civ.App.— Waco 1978, writ ref'd n.r.e.). However, application of other rules of construction negates a holding that the amendment's passage was governed by Article XV(D) as a matter of law.

■ The interpretation of a written contract is a quest for the intention of the parties to it. *Jim Walter Homes, Inc. v. Schuenemann,* 668 S.W.2d 324, 330 (Tex. 1984). Language should be given its plain grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Fox v. Thoreson,* 398 S.W.2d 88, 92 (Tex.1966). Here, there is no clear intention that the parties intended to define the Article XV(C) "allocation of profits or losses" and "distribution" terms solely by Article VIII.

A fact issue is present even if the Article XV(C) language is limited and defined by Article VIII. The formula or "method" for the allocation of profits or losses in Article VIII(A) is dependent on the use of a fraction, the numerator of which is the number of units owned by the partner in question and the denominator of which is the total number of units owned by all of the partners. Under the first amended agree-

ment's definition of "unit," the denominator could be no more than 300. Under the second amended agreement, the denominator is potentially unlimited and a unit holder's share of the profits could be reduced infinitely. Since the definition of "unit" used in Article VIII as the foundation for the allocation of profits and losses is changed by the amendments, the amendments can be interpreted as "changing" the Article VIII(A) "allocation of profits and losses." Moreover, the potential dilution of a limited partner's share could also be construed as "changing" "the distribution of Partnership funds or assets" because the definition of "unit" is also an integral part of the operation of Article VIII(B).

■ Reilly also maintains that the court of appeals erred in ruling that the language of XV(C) is defined by Article VIII as a matter of law. Several additional rules of construction are pertinent to our inquiry. A court should construe contracts from a utilitarian standpoint bearing in mind the particular business activity sought to be served and need not embrace strained rules of interpretation which would avoid ambiguity at all costs. *Neece v. A.A.A. Realty Co.*, 159 Tex. 403, 322 S.W.2d 597, 602 (1959). Courts will avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive. *Hicks v. Smith*, 330 S.W.2d 641, 646 (Tex.Civ.App.—Forth Worth 1959, writ ref'd n.r.e.). Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way. *Automobile Ins. Co. v. Teague*, 37 S.W.2d 151, 153 (Tex.Comm'n App. 1931, judgmt. adopted).

A limited partner gives up his capital contribution and his management right in exchange for limited liability and a share of the profits of the business. *See* Tex.Rev. Civ.Stat.Ann. art. 6132a (Vernon 1970). Read in a light most favorable to Reilly, the first amended agreement evidences the limited partners' intent to protect their interest from dilution by authorizing a maximum of 300 units at not less than $50,000 each. A reasonable and utilitarian construction of Article XV(C) is that it was

intended to insure that the protection afforded by the definition of "unit" could not be altered without the unanimous consent of the limited partners. The elimination of this protection without a limited partner's consent is potentially oppressive towards the limited partners because they must increase their capital contribution through exercising their preemptive rights to maintain their proportion of ownership and profits. Also, the amendments give the managing general partner the authority to drastically dilute the limited partner's $50,000 units so as to work a practical forfeiture.

■ Accordingly we hold that there is a fact issue concerning whether the amendments "change the method of allocation of the profits or losses or the distribution of the Partnership funds or assets" thus requiring unanimous approval under Article XV(C). We overrule all of Reilly's other points and remand this cause to the district court for trial.

ROBERTSON, J., files a dissenting opinion in which KILGARLIN and GONZALEZ, JJ., join.

ROBERTSON, Justice, dissenting.

I respectfully dissent. Article XV(c) of the original agreement provides that any amendment which will "adversely affect the general liabilities of the limited partners, or change the *method* of *allocation* of the profits or losses or the *distribution* of the partnership funds or assets shall require consent in writing of all limited partners." Article XV(d) provides that any other action by the general partners requires only a two-thirds approval by the limited partners. The majority here agrees with Reilly's contention that a fact question exists because it is not clear as to whether XV(c) or (d) should be used in the present situation. By reaching such a conclusion, the majority violates the rule of *Fox v. Thoreson*, 398 S.W.2d 88, 92 (Tex.1966). *Fox* holds that when construing a contract, language should be given its plain grammatical meaning unless it appears clear that the parties intended a different interpretation. The language of this provision

is clear on its face, thus it should be enforced as written.

Reilly is essentially arguing that a change in method has occurred because the new agreement allows the managing partner to create an infinite number of limited partners, and also allows him to dilute the value of each limited partnership unit by not requiring each unit to cost $50,000. Section VIII of the original contract, entitled "Allocation of Profits and Losses," clearly states what the method of allocation will be. The managing partner will get a set amount and the limited partners and other general partners will get a proportionate share depending on the number of units they own. Changing the potential *number* of limited partners in no way changes the *method* of allocation of profits and losses. The only thing that changes is the percentage which each limited partner will receive, thus a different "amount" rather than a different "method" is contemplated by the amended agreements. A method is a design, plan, scheme, form, style, course, line, modus operandi, practice, procedure, process, routine, manner, mode, system or technique used in attaining an end. *See Webster's Collegiate Thesaurus* page 519 (1976).

I agree with the court of appeals that the clear and unambiguous language of the agreement provides that only a change of the method of allocation would require a unanimous vote. For example, if the managing partner was to receive a greater proportion of the profits or losses, *that* would need a unanimous vote of the limited partners. Or, if the general partners were to receive twice as much as the limited partners, that too would require unanimous consent. Merely changing the amount each partner is entitled to under the method used requires only two-thirds vote. The same analysis serves for the *distribution* of the assets. Just because Reilly receives less for his share does not mean the method of distribution has been changed. There is no ambiguity in the language, and thus no fact question exists. In my judgment, the agreement clearly gives the managing partner the power to do what was attempted here. In addition, Reilly is amply protected by having the preemptive right to buy a proportionate number of shares to keep the value of his interest the same. I would affirm the judgment of the court of appeals which held that there was no need for a unanimous vote.

KILGARLIN and GONZALEZ, JJ., join in this dissenting opinion.