**HILL CONSTRUCTORS, INC. and Insurance Company of North America, Appellants,**

v.

**STONHARD, INC., Appellee.**

**No. 01–91–00921–CV.**

Court of Appeals of Texas,
Houston (1st Dist.).

July 16, 1992.

Curby Ligon, Houston, for appellants.

Gregory L. Ceshker, Dallas, for appellee.

Before OLIVER–PARROTT, C.J., and COHEN and WILSON, JJ.

## OPINION

WILSON, Justice.

Appellants Hill Constructors, Inc. (Hill) and Insurance Company of North America (INA) appeal from a summary judgment granted to Stonhard, Inc. in a contract action. We affirm.

On January 8, 1987, Stonhard and Hill entered into a subcontract which provided that Stonhard would perform epoxy flooring work for the Duncan Hall Rehabilitation and Improvements Project (the project) at Texas A & M University. The subcontract was prepared by Hill. INA supplied the bond for the work. Under the subcontract, Stonhard was required to comply with section 09731 of the specifications, which set out in relevant part as follows:

**3.01 Preparation**

a. Examination: Examine substrate for defects. Report unsatisfactory conditions in writing to Owner's Representative and Architect. Do not proceed until unsatisfactory conditions have been corrected.

1. Starting work indicates

acceptance of substrate as constructed; installed epoxy flooring found to be unsatisfactory or defective shall be corrected at Installer's expense.

Other subcontractors also worked on the Project, under Hill's supervision. One of these other subcontractors was responsible for the concrete work, and was responsible for ensuring that the floors were properly leveled and sloped. No contract document called for Stonhard to perform any concrete work or to level or slope the floors. The concrete floor was installed approximately one month before Stonhard installed its epoxy flooring.

Unknown to Stonhard, however, the concrete floor had slight depressions, invisible to the naked eye, which affected the floor's levelness and caused drainage problems. The depressions were not readily discernible and were not called to Stonhard's attention by the subcontractor who installed the concrete floor. Stonhard's job was to bond

the epoxy to the substrate so that the epoxy would adhere to it.

Prior to installation of the epoxy flooring in the kitchen area of the project, Hill requested that Stonhard level an area of 580 square feet in the kitchen. Stonhard performed this work in November, 1987.

After Stonhard had completed the installation of the epoxy flooring in the kitchen and warewashing areas, a dispute developed between it and Hill regarding the levelness of the floor and its capability of proper drainage. The dispute centered on who was responsible for the floor levelness and drainage and who should repair the problems.

The parties settled the matter by executing a change order, which added additional terms to the terms of their subcontract. The change order was drafted by Hill. Pursuant to the order, Stonhard, under Hill's supervision, was to attempt to fill in certain areas of the floor designated by Hill in an attempt to correct the levelness and drainage problems. The change order specified that there were no guarantees, warranties, or representations by Stonhard as to the ultimate results concerning levelness and drainage.

The change order also required Stonhard to perform "cosmetic repairs" in the same designated areas, but Hill "recognize[d] and agree[d]" in the change order that "there may be some variance in color and transition lines between the reworked areas and the surrounding floor not being reworked and that this shall be acceptable." The change order also stated that Hill released Stonhard of "any responsibility for further cosmetic reworking of the floor in the warewashing area and any color variances or transition lines."

The change order also contained the following provision:

Upon completion of [the fill-in and "cosmetic" work], Hill Constructors, Inc., recognizes and agrees that Stonhard, Inc. has completed its performance in a workmanlike and acceptable manner under its original contract and authority for additional work. Hill Constructors, Inc., further recognizes that other than [the fill-in

and "cosmetic" work], there are no known defects or unworkmanlike conditions in the work of Stonhard, Inc. in the warewashing area and there are no breaches or defaults by Stonhard, Inc. as of the date of this agreement.

The change order also "specifically release[d] Stonhard from any [ ] responsibilities" for "tolerences of the level of the floor or whether the floor is properly pitched or sloped to provide adequate drainage." Stonhard performed the change order work the first week of January, 1988.

Neither Hill nor INA paid Stonhard for its work under the contracts, and Stonhard brought suit for the money it claimed was due. It moved for summary judgment on November 2, 1990. Along with other evidence presented with its motion, Stonhard presented evidence that it had installed the epoxy flooring in accordance with the relevant specifications and that, had the subcontractor responsible for the underlying concrete flooring installed the floor to the required specifications, the floor would have been level and able to drain properly. The trial court granted Stonhard's motion on July 1, 1991.

■ In its first point of error, Hill and INA contend that whether Stonhard had performed its subcontract was a genuine issue of material fact. In deciding whether there is a disputed material fact issue which should have precluded summary judgment, evidence favorable to the non-movant will be taken as true. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987). Every reasonable inference from the evidence must be indulged in favor of the non-movant. *Id.* Any doubts must be resolved in the non-movant's favor. *Id.*

Hill and INA subdivide this point of error into two arguments: (1) that Stonhard, prior to beginning work, was "responsible for the substrate" to a greater degree than just to inspect the surface, and (2) that Stonhard was required by the change order to relevel the kitchen.

■ We disagree in both respects. First, as to responsibility for the substrate,

section 09731 of the specifications states that Stonhard must "[e]xamine the substrate for defects." Stonhard performed this task, and neither Hill nor INA argues that Stonhard's examination was negligent or in any other way inadequate. Despite its examination, Stonhard was unable to spot the depressions, and presented proof to the trial court that they were in fact invisible.

■ Section 09731 also called for Stonhard to: "Report unsatisfactory conditions in writing ... Do not proceed until unsatisfactory conditions have been corrected." Since Hill prepared the contracts in this case, we construe them strictly against Hill in such a manner as to reach a reasonable result consistent with the apparent intent of the parties. *Gonzalez v. Mission American Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990). We construe the above language to mean that Stonhard was to report all *known* unsatisfactory conditions and not to begin work until all *known* unsatisfactory conditions had been corrected. This is the "reasonable, natural, and probable meaning," which we seek in construing the contract. *Brown v. Brown*, 245 S.W.2d 995, 997 (Tex.Civ.App.—Amarillo 1951, writ ref'd). A construction of the contract which would find that Stonhard had a duty to report even those unsatisfactory conditions that were undiscernible and could not reasonably be discovered would be unfair and illogical. We are to "avoid when possible and proper a construction which is unreasonable, inequitable, and oppressive." *Reilly*, 727 S.W.2d at 530. A construction that would require Stonhard to discover that which could not reasonably be discovered would indeed be unreasonable, inequitable, and oppressive, and thus we avoid this fallacious construction. *See Id.* Stonhard's responsibility under the contract cannot be fairly construed as that of a guarantor of the floor's levelness.

Since, despite Stonhard's efforts, the unsatisfactory conditions were not discovered, we hold that Stonhard fully performed its obligation here. Although the language states that "[s]tarting work indicates acceptance of substrate as constructed," we hold that Stonhard did not *knowingly* accept the defective substrate, but rather inherited it unknowingly.

■ Nor do we agree that Stonhard was "required to relevel the kitchen" by the change order. Although the change order states that one of its purposes is "to attempt to reasonably level the floor," Stonhard made such an attempt, and the change order also states that "it is expressly understood that no representatives [sic], guarantees, or warranties are being given by Stonhard, Inc., as to the tolerances of the level of the floor or whether the floor is properly pitched or sloped to provide adequate drainage, and Hill Constructors, Inc. specifically releases Stonhard from any such responsibilities." Considering this very plain language, we hold that Stonhard, which, it is undisputed, did attempt to relevel the kitchen, met its obligation here.

We overrule point of error one.

■ In point of error two, Hill and INA contend that whether Stonhard was released under the change order was also a genuine issue of material fact. They argue that the "release" in the change order "was not intended to cover the kitchen."

■ We disagree. The change order states that, aside from the work to be done which was specified in the change order itself, and which, it is undisputed, was done, "Hill Constructors, Inc., further recognizes that ... there are no known defects or unworkmanlike conditions in the work of Stonhard, Inc. in the warewashing area *and there are no breaches or defaults by Stonhard, Inc. as of the date of this agreement* " (emphasis added). The italicized language, unlike the passage that precedes it, is unlimited in scope and clearly refers to all of Stonhard's work, not just its work in the kitchen. We reject Hill and INA's argument that the change order is ambiguous or unclear. Where a written contract can be given a certain or definite legal meaning or interpretation, it is not ambiguous. *Alba Tool & Supply Co., Inc. v. Industrial Contractors, Inc.*, 585 S.W.2d 662, 664 (Tex.1979). Although Hill and INA ask "No breaches or defaults

where?", the language regarding breaches or defaults is clearly unlimited and therefore logically applies to all of Stonhard's work. In so holding, we note again that the language should be strictly construed against Hill, its drafter. *Gonzalez*, 795 S.W.2d at 737.

We overrule point of error two.

Stonhard brings two cross-points, the first arguing that it should be awarded further damages because Hill and INA brought this appeal "for delay and without sufficient cause," and the second asking that the costs for the preparation of the statement of facts be taxed against Hill and INA.

■ We overrule both cross-points. We disagree with Stonhard that the record indicates "that the [a]ppellants were not serious about prosecuting their appeal and supports a determination of frivolousness." Stonhard points out that Hill and INA asked us to consider untimely-filed summary judgment evidence, requested an extension of time to file the transcript, requested a supplemental transcript which included only their untimely-filed evidence, requested an extension of time to file their brief, did not cite to the record properly in their brief, and cited cases for only general propositions of law.

Hill and INA's requests for extensions were properly filed and were for proper reasons, and were therefore granted. While they do ask us to consider evidence which was untimely-filed, and while their brief was not a model brief, we would not be justified in finding that their appeal was "for delay and without sufficient cause." TEX.R.APP.P. 84.

■ Stonhard asks us to assess costs for preparation of the statement of facts against Hill and INA because, after the delay in the determination of this appeal due to their filing the statement of facts later than usual, pursuant to a proper request for an extension, which was granted, they do not once cite to the statement of facts in their brief. It is true that Hill and INA do not cite to the statement of facts, and that the statement of facts contains only argument, not evidence. Nevertheless, this does not rise to the level of cause for us to order all costs for its preparation taxed against Hill and INA.

We overrule Stonhard's cross-points.

We affirm the judgment of the trial court.