

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00191-CV

DRIVEWAY AUSTIN GP, LLC, APPELLANT

V.

TURBO PARTNERS, LLC, APPELLEE

On Appeal from the 53rd District Court
Travis County, Texas
Trial Court No. D-1-GN-10-004293, Honorable Lora J. Livingston, Presiding

August 7, 2013

## DISSENTING OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Ultimately, the issue in this case comes down to this, is the specific supermajority requirement of paragraph 3.08 of the limited partnership agreement, providing for removal of the general partner by the unanimous vote of the Class B Limited Partners, an exception to the general simple majority requirement of paragraph 9.06 of that agreement, providing for the amendment of the agreement?  The majority says that it is not.  I say that it is.  Accordingly, I respectfully dissent.

## FACTUAL AND PROCEDURAL BACKGROUND

While the majority opinion accurately sets forth the factual background of this case, additional facts included hereinbelow are relevant to a complete understanding of the terms of the limited partnership agreement. The original agreement was entered into on August 30, 2007. It consisted of 32 pages of single spaced, detailed partnership provisions; followed by five pages of signatures, and an exhibit, summarizing the partners and their respective capital contributions. There were twenty-two separate Class A limited partners, representing 74 "units" of investment, three Class B limited partners, and one general partner. The agreement defined a "majority in interest" to mean, with respect to any referenced *group* of partners, a combination of such partners who, in aggregate own more than fifty percent (50%) of the partnership interests owned by that *group* of partners.

Paragraph 9.06 of the limited partnership agreement provides that "[e]xcept as herein otherwise provided, this Agreement may be amended, supplemented or restated only by a written consent of a Majority in Interest of the Limited Partners." According to the terms of the agreement, prior to the "first payout," for voting purposes the partnership interests of the partners was ninety percent (90%) for the Class A limited partners, nine percent (9%) for the Class B partners, and one percent (1%) for the general partner.

On August 3, 2010, purportedly acting in accordance with the general amendment provisions of paragraph 9.06, nine of the twenty-two Class A limited partners, representing 49/74 (66.216%) of the "partnership interest" owned by the Class

2

A group of limited partners, joined by none of the Class B group of limited partners, executed an *Action By Written Consent of Limited Partners in Lieu of Special Meeting*, purporting to amend paragraph 3.08 of the limited partnership agreement.[1] Prior to the purported amendment, paragraph 3.08 of the agreement specifically provided that "[t]he General Partner may be removed by the Partners, but only for good cause, . . . by the vote-holders of one hundred percent (100%) of the Class B Units." Subsequent to the purported amendment, Paragraph 3.08 provided that "[t]he General Partner may be removed, with or without cause, by . . . a Majority in Interest of the Class A Limited Partners . . . ." It is this act of purportedly amending paragraph 3.08 of the limited partnership agreement that is at issue in this case.

## ANALYSIS

My analysis begins by acknowledging that neither the Texas General Partnership Law, *see* TEX. BUS. ORG. CODE ANN. § 1.008(f) (WEST 2012), nor the Texas Limited Partnership Law, *see* TEX. BUS. ORG. CODE ANN. § 1.008(g) (WEST 2012), prohibits the removal and substitution of a general partner in a limited partnership, even where the partnership agreement initially does not directly allow such action, provided the partnership agreement does provide a method for amendment and an amendment permitting removal and substitution of a general partner is duly adopted. *See Aztec Petroleum Corp. v. MHM Co.,* 703 S.W.2d 290, 293 (Tex.App.—Dallas 1985, no writ). Because Appellant was not removed in accordance with the terms of the original limited partnership agreement but was, instead, removed in accordance with the terms of the

---

[1]It is undisputed that as of August 3, 2010, the "first payout" had not occurred. Therefore, for voting purposes, 59.594% of the combined voting interests of the "Limited Partners" executed the *Written Consent* purporting to amend the limited partnership agreement.

amended agreement, the question is squarely directed to the propriety of that purported amendment.

Appellant posits that the amendment was not duly adopted because the terms of paragraph 9.06 expressly except provisions of the agreement which require something other than a "majority in interest" for voting purposes.  Specifically, Appellant contends that because paragraph 3.08 requires the approval of one hundred percent (100%) of the Class B limited partners, that specific provision is not subject to the general amendment provisions of paragraph 9.06 by a simple majority in interest of the Class A limited partners.  On the other hand, Appellee contends that because the original agreement did not expressly prohibit an amendment of any provision allowing for the removal of the general partner, the "except as herein otherwise expressly provided" limitation of paragraph 9.06 does not prohibit the purported amendment.

In resolving these two contrary positions, we are guided by the principle that partnership agreements are construed and interpreted in accordance with applicable rules of contract construction.  *Park Cities Corp. v. Byrd*, 534 S.W.2d 668, 672 (Tex. 1976).  In construing a written contract, our primary concern is to ascertain the true intentions of the parties as expressed in the instrument.  *J. M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003).  Like any other contract, to achieve that objective we must examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract so that none will be rendered meaningless. *Id.* "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Id.* "Contract terms are given their plain, ordinary, and generally accepted meanings unless the

4

contract itself shows them to be used in a technical or different sense." *Valance Operating Co. v. Dorsett,* 164 S.W.3d 656, 662 (Tex. 2005). In determining the intent of the parties, we also give the language of the agreement its plain grammatical meaning unless it definitely appears that the intention of the parties would otherwise be defeated. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex. 1987). Furthermore, we may neither rewrite the parties' agreement nor add to its language. *Am. Mfrs. Mut. Ins. Co. v. Schaefer,* 124 S.W.3d 154, 162 (Tex. 2003).

Several additional rules of construction are pertinent to our inquiry. A court should also construe an agreement from a utilitarian standpoint bearing in mind the particular business activity sought to be served and we need not embrace strained rules of interpretation which would avoid ambiguity at all costs. *Reilly*, 727 S.W.2d at 530. Courts should also avoid when possible any construction which is unreasonable, inequitable, and oppressive. *Id.* Furthermore, an agreement should not be construed so as to work a forfeiture unless otherwise compelled to do so by language which can be construed in no other way. *Id.*

Read in a light most favorable to Appellant, the original partnership agreement evidences the general partner's intent to protect its interest by authorizing removal only upon the unanimous consent of the Class B limited partners. The unilateral elimination of this protection based upon a simple majority in interest of the Class A limited partners is oppressive towards both the Class B limited partners and the general partner because they completely lose their right to retain and maintain the general partner as originally agreed. Accordingly, a harmonious, reasonable and utilitarian construction of paragraphs 3.08 and 9.06 is that they were intended to be construed together in a

manner that would insure that protection rather than operate in a fashion resulting in the forfeiture of that protection.

Here, there is no clear indication that the parties intended a simple majority of the limited partners to be able to amend the agreement to completely abrogate the protections of the supermajority vote required by paragraph 3.08. To the contrary, the clear language of paragraph 3.08 evinces a critical provision specifically agreed to by the parties for the protection of the interests of the Class B limited partners and the general partner.

Appellee relies exclusively on paragraph 9.06 to support its position and, in doing so, it contends that the "except as herein otherwise expressly provided" limitation does not apply because the agreement does not expressly prohibit amendment of paragraph 3.08 by a simple majority in interest of the limited partners. Because this is an appeal from a summary judgment proceeding, to accept Appellee's position we would have to be able to say that, as a matter of law, the intent of the parties, as expressed by the written agreement, was that the limitation provision of paragraph 9.06 did not apply, and that paragraph 3.08 could be amended by a simple majority in interest vote of the limited partners.

The majority approaches the resolution of this question by "[a]pplying common rules of grammar to section 9.06" to find that the limiting clause found in paragraph 9.06 applies to the *act* of amendment, rather than the *vote* necessary to effectuate a change of the express written intent of the parties. In doing so, I believe the majority misapplies common rules of grammar. In properly analyzing paragraph 9.06 through the

6

application of common rules of grammar, the question we must address is whether the parties intended the limiting provision "except as herein otherwise expressly provided" to apply to the *act* of amendment or the *vote* necessary to effectuate an amendment.  I believe it clear that the parties intended the latter – that the exception apply to vote necessary to change the otherwise clearly expressed intent of the parties.  First, the language of paragraph 9.06 and prior case law support this construction.  By use of the prepositional phrase "by" we can determine that the true intent of the parties was not only to provide that the agreement could be amended, but also to provide that it would be amended *by* a particular manner and means – in this case, "by the written consent of a Majority in Interest of the Limited Partners . . . ."  "The use of the prepositional word "by" in [a document] is a tip-off that probably . . . the phrase will be a description of *how* the [action] was committed." *Jefferson v. State*, 189 S.W.3d 305, 315 (Tex.Crim.App. 2006) (Cochran, J., concurring) (emphasis added); *Moss v. State,* No. 07-12-00067-CR, slip op. at 6-7, (Tex.App.—Amarillo Aug. 2, 2013, available at http://www.search.txcourts.gov/DocketSrch.aspx?cpa=cpa07.  Accordingly, I believe that the proper application of common rules of grammar indicate that the limitation provision of paragraph 9.06 applied to the manner in which an amendment was to be adopted.

To that extent, provisions of the agreement that expressly provide for a vote "otherwise," i.e., other than by a simple majority, those specific provisions are excepted from the general amendment provisions of paragraph 9.06.  To construe paragraph 9.06 otherwise is to work a forfeiture of those protections and to render illusory any provision of the agreement providing for either a supermajority or the approval of a particular

7

class of voters.  A construction that allows paragraph 3.08 to be amended by a simple majority in interest of the limited partners ignores the requirement that we harmonize and give effect to all provisions of the agreement.  Furthermore, I believe it to be an unreasonable interpretation to allow a simple majority of the limited partners, "with or without cause," the unfettered authority to completely abrogate the protections of the supermajority which were clearly and specifically agreed upon by the parties.  Because Appellee's construction of paragraph 9.06 renders the provisions of paragraph 3.08, as originally drafted, to be illusory and meaningless, I do not believe that construction to be reasonable, necessary or appropriate.  Accordingly, I would sustain Appellant's first issue, pretermit the remaining issues, reverse the judgment of the trial court, render judgment granting Appellant's motion for summary judgment, and remand the case to the trial court for further proceedings consistent with this opinion.


                                Patrick A. Pirtle
                                Justice