**Affirmed and Opinion Filed November 1, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-23-00890-CV

### JANICE C. STAUB AND PARKER D. YOUNG, Appellants
### V.
### BBVA USA, Appellee

**On Appeal from the 298th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-21-02323**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Goldstein, and Miskel
Opinion by Justice Partida-Kipness

Appellants Janice Staub and Parker Young (together, Young) appeal a summary judgment granted in favor of BBVA, USA. Young's appeal raises a single primary issue: whether forfeiture of principal and interest is an available remedy for BBVA's alleged breach of a home-equity loan agreement by charging an incorrect interest rate and failing to cure within sixty days after Young's notice of the breach. Young contends forfeiture is available and therefore the trial court erred in granting partial summary judgment in favor of BBVA while denying Young's motion for partial summary judgment on the forfeiture issue. We conclude forfeiture is not an

available remedy under these circumstances. Therefore, we affirm the trial court's judgment.

## BACKGROUND

In early 2018, Young applied for a home-equity line of credit (HELOC) with BBVA. At the time, BBVA offered borrowers a promotional interest rate of 0.26% lower than the Wall Street Journal prime rate for the life of a new HELOC loan. The offer's terms stated that to receive the promotional rate, borrowers were required to take advances totaling at least $25,000 within fifteen days of the closing date and have at least $25,000 outstanding on the HELOC at the end of the fifteenth day after closing. However, these requirements did not apply if the property securing the HELOC was located in Texas.

Young's loan closed on May 26, 2018. Young executed and delivered to BBVA an Equity Optimizer HELOC Agreement and Disclosure (the HELOC Agreement) and a deed of trust establishing the HELOC and securing it with a lien against Young's home. The HELOC Agreement included the 0.26% interest rate reduction described in the loan offer and acknowledged the extension of credit is subject to Article XVI, Section 50(a)(6) of the Texas Constitution. The HELOC Agreement states, in relevant part:

> Texas Home Equity Loan Conditions. This Agreement is made under the following conditions…
>
> (J) Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, we shall forfeit all principal and interest of the extension of credit if we

–2–

fail to comply with our obligations under the extension of credit and fail to correct the failure to comply not later than the 60th day after the date you or any homestead owner notifies us of our failure to comply by….

(vi) if the failure to comply cannot be cured by any of the means set forth above within this paragraph, curing the failure to comply by a refund or credit to you of $1,000.00 and offering you the right to refinance the Credit Line Account with us for the remaining term of the Credit Line Account at no cost to you on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with Section 50(a)(6), Article XVI, Texas Constitution or on terms on which we and you otherwise agree that comply with Section 50(a)(6), Article XVI, Texas Constitution….

In late 2020—two and a half years after closing—Young discovered BBVA had been charging a higher interest rate than the promotional rate offered and agreed to by the parties. As a result, Young had paid money to BBVA that should have been credited to principal rather than interest. On December 2, 2020, Young contacted BBVA regarding the billing discrepancy. Young alleged a BBVA customer service representative told him the case was being "escalated" to another team who would investigate and get back to him. BBVA responded in writing on January 29, 2021 to explain why it believed no error had occurred. BBVA believed Young did not qualify for the promotional interest rate discount because Young had not taken $25,000 of advances or maintained at least $25,000 on the HELOC fifteen days after closing.

Young responded by email on February 12, 2021, pointing out that the $25,000 requirements did not apply in Texas, where Young's property was located. Young then sued BBVA twelve days later. Young contended BBVA never attempted

to cure the overcharges until Young filed suit. Young asserted a breach of contract claim against BBVA and sought forfeiture of principal and interest on the loan. Shortly thereafter, BBVA apparently realized it had in fact overcharged Young by $9,521.77 in interest. Before answering Young's suit, BBVA corrected the charged interest rate to conform with the HELOC Agreement. BBVA later offered to reimburse Young for the excess interest charged, either by crediting the unpaid principal balance of the loan or by direct payment. Young argued that forfeiture was an available remedy and that as such, damages were significantly higher. The parties could not reach a settlement agreement.

The parties filed cross-motions for summary judgment on whether forfeiture was an available remedy for Young. Young contended BBVA undisputedly breached the HELOC Agreement by charging a higher than agreed-to interest rate. Young asserted forfeiture was an available remedy under the previously-quoted HELOC provisions due to BBVA's failure to cure within sixty days by giving Young a $1,000 refund or credit and offering to refinance the HELOC on the same terms as the original loan. BBVA argued forfeiture did not apply to breach of a business term in a contract (such as the promotional interest), as opposed to a contractually-mandated term required by Article XVI, Section 50(a)(6) of the Texas Constitution.

On May 16, 2023, the trial court granted BBVA's motion, ruling Young was not entitled to forfeiture of principal and interest on the HELOC. On June 26, 2023, BBVA credited $12,630.32 to the principal balance of the loan, representing the

overcharged interest payments and prejudgment interest. The parties then submitted a joint stipulation addressing undisputed facts to facilitate the entry of a final, appealable judgment. The trial court entered a final judgment based on those stipulations. This appeal followed.

## STANDARDS OF REVIEW

### I.      Summary Judgments

We review the trial court's summary judgment de novo. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019). To prevail on a traditional summary judgment motion, a movant must show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *Id.* We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Id.*

When both sides move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both sides' summary judgment evidence and determine all questions presented. *FM Properties Operating Co. v. City of Austin*, 22 S.W.3d 868, 872–73 (Tex. 2000). The reviewing court should render the judgment the trial court should have rendered. *Id.* When a trial court's order granting summary judgment does not specify the grounds relied upon, the reviewing court must affirm summary judgment if any of the summary judgment grounds are meritorious. *Id.*

## II. Contract Construction

Absent ambiguity, contracts are construed as a matter of law. *Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 305 (Tex. 2015) (citations omitted). In construing a written contract, our primary objective is to ascertain the parties' true intentions as expressed in the language they chose. *Id*. We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served and avoiding unreasonable constructions when possible and proper. *Id.* To that end, we consider the entire writing, harmonizing and giving effect to all the contract provisions so that none will be rendered meaningless. *Id.* No single provision taken alone is given controlling effect; rather, each must be considered in the context of the instrument as a whole. *Id.* We also give words their plain, common, or generally accepted meaning unless the contract shows the parties used words in a technical or different sense. *Id.*

Forfeitures are disfavored, and contracts are construed to avoid them. *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 239 (Tex. 2016). Courts will not declare a forfeiture unless they are compelled to do so by language which can be construed in no other way. *Reilly v. Rangers Mgmt., Inc.*, 727 S.W.2d 527, 530 (Tex. 1987). Forfeiture of a contract is to be avoided when another reasonable reading of the contract is possible. *Meridien Hotels, Inc. v. LHO Fin. P'ship I, L.P.*, 255 S.W.3d 807, 819 (Tex. App.—Dallas 2008, no pet.). However, a clear and specific forfeiture provision in a contract will be honored. *Id.*

## III. Constitutional Construction

We strive to give constitutional provisions the effect their makers and adopters intended. *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474, 477 (Tex. 2016). Accordingly, when interpreting our state constitution, we rely heavily on its literal text and give effect to its plain language. *Id.* We presume the constitution's language was carefully selected, and we interpret words as they are generally understood. *Id.* We construe constitutional provisions and amendments that relate to the same subject matter together and consider those amendments and provisions in light of each other. *Id.*

## ANALYSIS

Young's brief raises a single key issue: whether forfeiture is an available remedy for BBVA's alleged breach of the HELOC Agreement by applying the incorrect interest rate and failing to cure within sixty days after Young's notice of the breach. We conclude that, under the circumstances of this case, forfeiture is not an available remedy.

## I. Home-equity Loans and the Texas Constitution

In Texas, the homestead has always been protected from forced sale by the Constitution. *Garofolo*, 497 S.W.3d at 477. In 1997, Texas citizens voted to amend the Texas Constitution to permit home-equity loans. *Id.* Amended again in 2003, the constitution contains a list of requirements that are necessary for a home-equity lender to obtain a valid lien on the homestead. TEX. CONST. art. XVI, § 50(a)(6).

Among those requirements is that the home-equity loan must be made subject to certain specific conditions. *Id.* § 50(a)(6)(A)–(Q). When reduced to the language relevant to this case, Section 50(a) reads:

> The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for…(6) an extension of credit that…(Q) is made on the condition that…(x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the lender's or holder's obligations under the extension of credit and fails to correct the failure to comply not later than the 60th day after the date the lender or holder is notified by the borrower of the lender's failure to comply….

*Id.* § 50(a)(6)(Q)(x).

Section 50(a)(6)(Q)(x) provides a defaulting lender with six different curative options to avoid forfeiture. *Id.* § 50(a)(6)(Q)(x)(a)-(f). Young relies on the cure described in subparagraph (f):

> if the failure to comply cannot be cured under Subparagraphs (x)(a)-(e) of this paragraph, curing the failure to comply by a refund or credit to the owner of $1,000 and offering the owner the right to refinance the extension of credit with the lender or holder for the remaining term of the loan at no cost to the owner on the same terms, including interest, as the original extension of credit with any modifications necessary to comply with this section or on terms on which the owner and the lender or holder otherwise agree that comply with this section….

*Id.* § 50(a)(6)(Q)(x)(f). This catch-all provision will usually present a fix that will correct the borrower's complaint when no other corrective measure would. *Garofolo*, 497 S.W.3d at 483.

## II. BBVA's Alleged Breach of the HELOC Agreement Does Not Compel Forfeiture

Here, the HELOC Agreement acknowledges it is subject to Article XVI, Section 50(a)(6) of the Texas Constitution and contains the terms required by the constitution, including the forfeiture language at dispute. The HELOC Agreement provides, in relevant part:

> Texas Home Equity Loan Conditions. This Agreement is made under the following conditions…
>
> (J) Except as provided otherwise in this paragraph, but only to the extent required by Section 50(a)(6), Article XVI, Texas Constitution, we shall forfeit all principal and interest of the extension of credit if we fail to comply with our obligations under the extension of credit and fail to correct the failure to comply not later than the 60th day after the date you or any homestead owner notifies us of our failure to comply….

Young contends any post-origination breach of the loan's terms and conditions—including the agreed upon interest rate—supports forfeiture. Meanwhile, BBVA contends forfeiture is only available for the breach of a term or condition mandated by the Texas Constitution. Both parties rely heavily on *Garofolo v. Ocwen Loan Servicing, L.L.C.*, 497 S.W.3d 474 (Tex. 2016) to support their respective positions.

In that case, Garofolo paid off her home-equity loan but did not receive a release of lien from Ocwen as required by the loan's terms and the Texas Constitution. *Id.* at 476. After Ocwen failed to send Garofolo the release within sixty days after Garofolo's notice, Garofolo sued Ocwen in federal district court for violating home-equity lending provisions of the Texas Constitution and for breach

of contract. *Id.* For both claims, Garofolo sought Ocwen's forfeiture of all principal and interest she paid on the loan. *Id.* The case proceeded to the Fifth Circuit Court of Appeals, which certified two questions to the Texas Supreme Court. *Id.* Essentially, the supreme court was tasked with determining whether (1) a constitutional forfeiture remedy was available to Garofolo for Ocwen's failure to return the cancelled note and release of lien within the sixty-day deadline; and (2) if constitutional forfeiture was not available, was forfeiture available under a breach-of-contract theory? *Id.*

The supreme court first determined that the terms and conditions required in a foreclosure-eligible home-equity loan are not substantive constitutional rights, nor does a constitutional forfeiture remedy exist to enforce them. *Id.* at 477-79. The court then turned to the issue of whether Garofolo could seek forfeiture through her breach-of-contract claim absent actual damages. *Id.* at 479. The court ultimately concluded that, while forfeiture may be an available remedy for a post-origination breach in some circumstances, that remedy was not available to Garofolo because none of the six corrective measures in subparagraph 50(a)(6)(Q)(x) could actually correct the underlying problem—the failure to send the release of lien. *Id.* at 479-84. Young contends *Garofolo* supports that any post-origination breach will support a forfeiture remedy. BBVA contends *Garofolo* compels that only a breach of a constitutionally-required term will support forfeiture. *Garofolo* did not squarely address the issue before us.

However, we previously addressed the forfeiture remedy under similar facts in *Vincent v. Bank of America, N.A.*, 109 S.W. 856 (Tex. App.—Dallas 2003, no pet.). *Vincent* involved the pre-2003 version of the constitution's home-equity provisions. The Vincents sued Bank of America, seeking forfeiture, after a dispute arose regarding how payments were being allocated between principal and interest on the Vincents' home-equity loan. *Id.* at 861. We held that:

> forfeiture is *only* available for violations of constitutionally mandated provisions of the loan documents. Violation of any other provision of the loan documents may result in traditional breach of contract causes of action only, with traditional breach of contract remedies. Therefore, the Vincents were only entitled to forfeiture if the Bank breached a provision of the Loan Agreement that was constitutionally mandated.

*Id.* at 862 (emphasis in original). We then discussed that, because the original loan's terms regarding the calculation of interest and application of payments were not constitutionally-mandated, their breach would not support forfeiture. *Id.* The Vincents argued that, because the constitution required that the loan be scheduled to be repaid in equal successive monthly installments, each of which equals or exceeds the amount of accrued interest, the bank's misapplication of payments resulted in excess interest accruing. *Id.* at 862. We rejected this argument, stating that because the loan was scheduled to be repaid in compliance with the constitution, forfeiture was not an available remedy. *Id.*

In *Garofolo*, the supreme court took issue with *Vincent*'s statement: "As long as the Loan Agreement, as originally entered into by the parties, complies with the

–11–

provisions of the constitution, forfeiture is not an appropriate remedy." *Garofolo*, 497 S.W.3d at 484, n.10. The court then stated:

> [A]s we clarify today, whether a loan complies with the constitution answers only the question of whether the lender may seek a forced sale of the homestead. A forfeiture remedy incorporated into the terms of a loan and enforced through a breach-of-contract action may, under circumstances not presented in this case, impose forfeiture in response to a lender's post-origination breach of the loan's terms.

*Id.* However, the *Garofolo* footnote can be read as instructing that post-origination breach may occur, even if the loan is constitutionally compliant at origination. We do not believe *Garofolo* alters *Vincent*'s statement that forfeiture is only available for violations of constitutionally-mandated provisions of the loan documents. Neither do we believe *Garofolo* stands for the proposition that a misapplication of a loan's interest rate will subject the lender to forfeiture of the loan's principal and interest. While *Garofolo* did not answer the question directly, other portions of the opinion suggest the forfeiture remedy is limited to breach of constitutionally-mandated terms:

> Our *constitution lays out the terms and conditions* a home-equity loan must include if the lender wishes to foreclose on a homestead following borrower default…A post-origination breach of *those terms and conditions* may give rise to a breach-of-contract claim for which forfeiture can sometimes be an appropriate remedy.

*Id.* at 475 (emphasis added); *see also Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 356-57 (Tex. 2000) (interpreting 1997 version of Section 50(a)(6) and stating, "Section 50(a)(6) also provides that the lender forfeits all principal and interest of the loan if it fails to comply *with the obligations set out in section 50(a)(6).*")

–12–

(emphasis added). Accordingly, we conclude forfeiture is not an available remedy for BBVA's misapplication of the proper interest rate.[1]

Our conclusion is supported by the text of the HELOC Agreement, which provides in relevant part:

> Texas Home Equity Loan Conditions. This Agreement is made under the following conditions…
>
> (J) Except as provided otherwise in this paragraph, <u>but only to the extent required by</u> Section 50(a)(6), Article XVI, Texas Constitution, we shall forfeit all principal and interest of the extension of credit if we fail to comply with our obligations under the extension of credit and fail to correct the failure to comply not later than the 60th day after the date you or any homestead owner notifies us of our failure to comply…. (emphasis supplied).

We are required to avoid forfeiture unless the contract's language can be construed in no other way. *Reilly*, 727 S.W.2d at 530. The text of the HELOC Agreement can be construed as limiting the forfeiture remedy to breach of constitutionally-mandated provisions. A promotional, reduced interest rate is not a constitutionally-mandated provision.[2]

Other portions of the loan documents further support our conclusion. The final page of the HELOC Agreement, entitled "Billing Error Rights," contains a

---

[1]    If we adopted Young's position, BBVA would forfeit approximately $700,000 in principal and interest.

[2]    Even a breach of a constitutionally-mandated provision will not always give rise to a forfeiture remedy. As *Garofolo* recognized, the availability of a forfeiture remedy will depend on the circumstances of the case. *See Garofolo*, 497 S.W.3d at 484, n.10. In an unpublished opinion, the Fifth Circuit Court of Appeals held that the failure to close a home equity loan at one of the constitutionally-required locations did not entitle the homeowner to the forfeiture remedy: "[the constitutional provision] does not serve as a weapon for refinancing homeowners who are not in default or threat of foreclosure to get a free loan." *Dill v. Fed. Home Loan Mortgage Corp.*, No. 21-20533, 2022 WL 1532634, at l (5th Cir. 2022).

statement of the parties' rights and responsibilities in the event of a billing error—

as required under the Fair Credit Billing Act.[3] Those provisions state, in relevant

part:

> We must acknowledge your letter within thirty (30) days, unless we have corrected the error by then. <u>Within ninety (90) days, we must either correct the error or explain why we believe the bill was correct.</u>
>
> After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount in question, including finance charges, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.
>
> If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date on which it is due…
>
> If we don't follow these rules, we can't collect the first $50 of the questioned amount even if your bill was correct.

Thus, the loan agreement incorporates an express procedure for addressing

billing errors that is incompatible with forfeiture as a contractual remedy.[4] And in

this instance, BBVA responded to Young's billing complaint within sixty days and

provided an explanation—albeit incorrect—for why BBVA believed the bills were

correct. We are required to consider the contract as a whole, harmonizing and giving

---

[3]  15 U.S.C. §§ 1666–1666j.

[4]  *See Langenfeld v. Chase Bank USA, N.A.*, 537 F. Supp. 2d 1181, 1201 (N.D. Okla. 2008) (recognizing that a creditor's error by using an incorrect rate or miscalculating the interest applied to a charge could constitute a "billing error" under the Fair Credit Billing Act.).

–14–

effect to all its provisions so that none will be rendered meaningless. *Plains Expl. & Prod. Co.*, 473 S.W.3d at 305. Adopting Young's reading of the forfeiture provision as applying to any breach of the loan's terms not cured within sixty days, including application of an incorrect interest rate, would largely negate the billing error procedures in the HELOC Agreement. If Young's position is correct, any failure to resolve a billing dispute within sixty days results in a forfeiture. We decline to read the contract in such a manner.

We conclude BBVA's alleged failure to apply the correct interest rate and cure the error within sixty days does not entitle Young to forfeiture of the loan's principal and interest. Accordingly, the trial court did not err in granting BBVA's motion for summary judgment and denying Young's motion for summary judgment. We overrule Young's sole issue.[5]

## CONCLUSION

BBVA's alleged breach of the HELOC Agreement's terms regarding the correct interest rate does not give rise to the remedy of forfeiture. The trial court did not err in granting BBVA's motion for summary judgment and denying Young's motion for summary judgment.

---

[5] Because we have determined forfeiture is not an available remedy for the complained-of breach, we need not consider whether the constitutional cure in Article XVI, Section 50(a)(6)(Q)(f) would have cured the breach. *See* TEX. R. APP. P. 47.1.

Accordingly, we affirm the trial court's judgment.

/Robbie Partida-Kipness/

ROBBIE PARTIDA-KIPNESS
JUSTICE

230890F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JANICE C. STAUB AND PARKER
D. YOUNG, Appellants

No. 05-23-00890-CV     V.

BBVA USA, Appellee

On Appeal from the 298th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-21-02323.
Opinion delivered by Justice Partida-
Kipness. Justices Goldstein and
Miskel participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellee BBVA USA recover its costs of this appeal from appellants JANICE C. STAUB AND PARKER D. YOUNG.

Judgment entered this 1st day of November, 2024.